STATE, EX REL. MILDRED PARMENTER, RELATOR, V. A. C. TROUP, DISTRICT JUDGE, RESPONDENT.

FILED MAY 1, 1915. No. 18930.

1. Mandamus: ALLOWANCE OF REMEDY. Although the common law writ of prohibition has been abolished in this state, the duty is still imposed upon this court to prevent violation of law by inferior tribunals, and, when there is no adequate remedy in the ordinary course of the law, mandamus is the appropriate remedy.

2. Damages: PERSONAL INJURIES: EXAMINATION OF PERSON. In an action for damages caused by injuries to the person, the trial courts have power to order an expert examination of the person of the party injured, when the circumstances of the trial make it necessary to do so and no substantial harm can result therefrom.

3. ———: ———: ———. Such examination will not be ordered unless it clearly appears that a condition exists that can be definitely determined by such examination and cannot be satisfactorily determined without.

Original proceeding in mandamus to compel respondent to reinstate a case. *Writ denied.*

*John O. Yeiser,* for relator.

*W. H. Herdman, contra.*

SEDGWICK, J.

The relator began an action in the district court for Douglas county to recover damages for personal injuries caused, as she alleged, by the negligence of the defendant in that action. After issue was joined, the defendant therein asked for an order that the plaintiff be required to submit her person to an examination by physicians to be appointed for that purpose. The court made the order, and the plaintiff refused to comply with it, and the court therefore dismissed her case without prejudice to another action. The plaintiff then applied to this court for a writ of mandamus against the judge who made the order requiring him to reinstate her case.

The first objection is that mandamus is not the proper remedy in such case. The common law writ of prohibition is abolished in this state, but the duty is still imposed upon this court to prevent violation of law by inferior tribunals, and, when there is no adequate remedy by the ordinary course of the law, mandamus is the appropriate remedy. *State v. Graves,* 66 Neb. 17. The plaintiff is entitled to a trial of her alleged cause of action upon its merits. She believes that the law is that she is entitled to such trial without submitting to the indignity to which she so strongly objects. If she is found to be wrong as to her rights in this regard, she may elect to submit to this requirement rather than to forego her claim entirely. An appeal from this order of dismissal, even if determined in her favor, might result in such delay as to practically defeat her action. Under such circumstances appeal is not an adequate remedy. This objection therefore must be overruled.

The relator contends that the trial court has no power under any circumstances to order a party to submit his or her person to expert examination. In her brief she says: "We waive all other questions, and counsel for the clients interested in sustaining such an order, who of such necessity represents defendant, waives all collateral questions

excepting the assertion of such a power." It is seldom that this court is called upon to determine a question of more importance or upon which there is so clear and determined difference of opinion among the courts of last resort in the several states. Each side of the controversy is ably supported by cogent and exhaustive reasoning of the many courts which have considered it. The supreme court of the United States has been divided upon the question, and has convincingly presented both sides of the controversy in an opinion and a dissenting opinion. *Union P. R. Co. v. Botsford,* 141 U. S. 250, which was decided in 1891. In general, the opinions of that court declaring principles of the common law are followed with confidence by this court. The majority opinion was prepared by Mr. Justice Gray, the dissenting opinion by Mr. Justice Brewer, and concurred in by Mr. Justice Brown. In the majority opinion it is said: "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. * * * The inviolability of the person is as much invaded by a compulsory stripping and exposure as by a blow. To compel any one, and especially a woman, to lay bare the body, or to submit to the touch of a stranger, without lawful authority, is an indignity, an assault and a trespass; and no order or process, commanding such an exposure or submission, was ever known to the common law in the administration of justice between individuals, except in a very small number of cases, based upon special reasons, and upon ancient practice, coming down from ruder ages, now mostly obsolete in England, and never, so far as we are aware, introduced into this country"—with further strong reasoning and copious citations of authorities. The opinion also contains this language: "But this is not a question which is governed by the law or practice of the state in which the trial is had. It depends upon the power of the national courts under the constitution and laws of the United States." Although the opinion concludes with the

statement that "the order moved for, subjecting the plaintiff's person to examination by a surgeon, without her consent and in advance of the trial, was not according to the common law, to common usage, or to the statutes of the United States," still the statement that the federal courts are not given this power by the constitution or laws of the United States tends to relax the authority which this opinion otherwise would have as a precedent to be followed by the courts of the several states. It will also be observed that the proposition, strongly stated in this opinion, that the act of congress, which provides that "the practice, pleadings and forms and modes of proceeding in the courts of each state are to be followed in actions at law in the courts of the United States held within the same state, neither restricts nor enlarges the power of these courts to order the examination of parties out of court," has been overruled by later decisions of that court. *Camden & S. R. Co. v. Stetson*, 177 U. S. 172. This later decision is now followed by the inferior federal courts. *Chicago & N. W. R. Co. v. Kendall*, 167 Fed. 62.

Mr. Justice Brewer, in the dissenting opinion, says: "In this country the decisions of the highest courts of the various states are conflicting. This is the first time it has been presented to this court, and it is, therefore, an open question. * * * The end of litigation is justice. Knowledge of the truth is essential thereto. It is conceded, and it is a matter of frequent occurrence, that in the trial of suits of this nature the plaintiff may make in the courtroom, in the presence of the jury, any not indecent exposure of his person to show the extent of his injuries; and it is conceded, and also a matter of frequent occurrence, that in private he may call his personal friends and his own physicians into a room, and there permit them a full examination of his person, in order that they may testify as to what they see and find. In other words, he may thus disclose the actual facts to the jury if his interest require; but by this decision, if his interests are against such a disclosure, it cannot be compelled." This language is followed by further reasoning which is worthy of care-

ful examination. Some of the further reasoning of Mr. Justice Brewer we desire to adopt, and therefore quote as follows: "It is not necessary, nor is it claimed, that the court has power to fine and imprison for disobedience of such an order. Disobedience to it is not a matter of contempt. It is an order like those requiring security for costs. The court never fines or imprisons for disobedience thereof. It simply dismisses the case, or stays the trial until the security is given. So it seems to us that justice requires, and that the court has the power to order, that a party who voluntarily comes into court alleging personal injuries, and demanding damages therefor, should permit disinterested witnesses to see the nature and extent of those injuries in order that the jury may be informed thereof by other than the plaintiff and his friends, and that compliance with such an order may be enforced by staying the trial, or dismissing the case." While the courts of last resort of nearly a dozen of the states of the Union have refused to indorse this reasoning, and have given reasons of undoubted force and clearness for such refusal, the courts of at least 20 of the states have reached the conclusion of Mr. Justice Brewer. The reasoning of these several courts upon either side of this question is so comprehensive and complete as to make it unnecessary for us to enter upon an extensive discussion.

The supreme court of North Dakota said: "If a court is powerless, in a case like this, to require a plaintiff to submit her injuries to the inspection of physicians, to the end that the exact truth as to their nature, effect, and possible duration may be ascertained, when she, by her suit, has made them the subject of judicial investigation, then the law would permit her to put forward just so much and such parts of the facts as, in her judgment, would benefit her case, at the expense of her adversary, and to invoke the court's aid to compensate her for an injury, through a partial and one-sided investigation. The court, under such circumstances, would become a means of accomplishing the grossest injustice." *Brown v. Chicago, M. & St. P. R. Co.,* 12 N. Dak. 61.

The supreme court of Maryland said: "We cannot admit that the trial court has no such power in any case, for sometimes it may be apparent that a plaintiff is feigning, and has not suffered such injuries as he pretends he has sustained. Instances are not unknown to courts and counsel, who have had experience in such cases, in which jurors have been imposed on, and sometimes even reputable physicians, who have been called upon to testify on behalf of plaintiffs, have been deceived. When, therefore, the ends of justice seem to require it, there can be no valid reason why an examination should not be permitted, if seasonable application is made, and the court is satisfied that no serious physical or mental injury is likely to be done the plaintiff." *United Railways & Electric Co. v. Cloman*, 107 Md. 681.

And the supreme court of Michigan said: "The decisions are not uniform upon this question, but the very great weight of authority is in favor of the exercise of such power by the court, under proper restrictions; the rule recognizing, however, that a wide discretion is vested in the trial court, which justifies a refusal to require the examination where the necessities of the case are not such as to call for it, or where the sense of delicacy of the plaintiff may be offended by the exhibition, or where the testimony would be merely cumulative, or where, in the judgment of the trial court, it would not materially aid the jury. The power has been exercised in Iowa, Alabama, Arkansas, Georgia, Ohio, Missouri, Nebraska, Texas, Minnesota, Kansas, Wisconsin, and Indiana. * * * Testimony which is open to one party ought logically to be open to his opponent, if it can be obtained with due regard to decency, and in the orderly conduct of the trial." *Graves v. City of Battle Creek*, 95 Mich. 266.

The supreme court of Kansas said: "The purpose of a trial is to mete out exact justice. This cannot be accomplished when the truth is suppressed, and this may be done, if the court has not the power to ascertain what the truth is. In an action for personal injuries, the injured party may call physicians, to whom he may expose his per-

son, not for the purpose of effecting a cure, but for the purpose of using this expert testimony to assist him in the trial of his case. He may also expose the injured portion of his person to the jury, observing the rules of decency. Should the litigant be permitted to withhold the truth or the means of ascertaining what the truth is simply because, in the ascertainment of the truth, he may conceive the idea that an indignity is being offered? That is not an indignity which is not so intended. May he be permitted to present so much of the truth as he desires and as he thinks to his interest and withhold the remainder? This would certainly be his privilege if the court does not possess the power to make an order that will develop the exact truth. It is suggested by some of the authorities, which hold contrary to the views herein expressed, that the rule would operate harshly upon delicate and modest females. We think such may safely rely upon the courts of this country. An examination should not be ordered needlessly, or where there might be a shock to one's modesty or feelings of delicacy. We only decide that the court has the power; it should be exercised according to the sound discretion of the presiding judge. It is safer in the administration of justice to trust to the courts to protect the sensibilities of the parties in such examinations, so far as it is possible to do so, and beyond that to hold them subordinate in importance and sacredness to the interest of justice, than to hold that a party to a litigation has it within his power to develop so much of the facts as may appear to be to his interest and then stop the investigation." *City of Ottawa v. Gilliland,* 63 Kan. 165.

The supreme court of Indiana said: "The cases above cited as affirming the existence of the power establish the following propositions: (1) That trial courts have the power to order the medical examination by experts of the injured parts of a plaintiff who is seeking to recover damages therefor; (2) that a defendant has no absolute right to demand the enforcement of such an order, but the motion therefor is addressed to the sound discretion of the trial court; (3) that the exercise of such discretion is

reviewable on appeal, and correctible in cases of abuse; (4) that the examination should be applied for and made before entering upon the trial, and should be ordered and conducted under the direction of the court, whenever it fairly appears that the ends of justice require a more certain ascertainment of important facts which can only be disclosed, or fully elucidated, by such an examination, and such an examination may be made without danger to the plaintiff's life or health, or the infliction of serious pain; (5) that the refusal of the motion, when the circumstances appearing in the record present a reasonably clear case for the examination under the rules stated, is such an abuse of discretion in the trial court as will operate to reverse a judgment for the plaintiff; (6) that such an order may be enforced, not by punishment as for a contempt, but by delaying or dismissing the proceeding." *City of South Bend v. Turner,* 156 Ind. 418.

Although the precise question here presented, whether the trial court has under any circumstances the power to order such an investigation, has perhaps never been directly and definitely considered and determined by this court, there are several cases in which expressions have been used that might be considered as indicating the opinion of the court as to the policy of our law. In *Stuart v. Havens,* 17 Neb. 211, it was stated in the syllabus that if the application is made during the trial it should be denied, and the third paragraph of the syllabus is: "If a personal examination is desired, the application should be made before the trial begins and experts agreed upon by the parties or appointed by the court." Upon the trial in that case the plaintiff was asked "to show his arm, which he claimed was injured by falling into the excavation, to the jury. This he did without objection and afterwards three physicians, who had treated the arm professionally, testified as to its condition without objection. Afterwards the defendant below asked the court below to make an order requiring Havens to exhibit his arm to four phyiscians called by him (the defendant). This the court refused to do." The opinion quotes *Sioux City & P. R. Co.*

*v. Finlayson,* 16 Neb. 578, as holding: "That where the request was made during the trial and it was sought to have the examination made by experts called by the adverse party, and not by those agreed upon by the parties, or appointed by the court, there was no error in denying the request." It then quotes a decision of the supreme court of Wisconsin, holding that an examination may be made during the trial, but adhering to the former decisions of the court in that regard. The opinion then says: "In any event the evidence partakes somewhat of a partisan character. To avoid this they should be agreed upon by the parties or appointed by the court, and an examination, if desired, should be made before the trial begins, although the court may permit it to be made during the progress of the trial." It was, perhaps, not necessary to determine in that case that the court may permit it to be made during the progress of the trial, or that the court has power under any circumstances to order such an examination, and yet this and other similar decisions of this court have been understood by the trial courts and by the profession generally to establish the right of the trial court to make such an order. *Stuart v. Havens, supra,* was decided 30 years ago, and since that time the trial courts have generally exercised such power. It has been understood by the courts of other states that this court has decided that our trial courts have such powers, and their decisions class Nebraska among the states so holding. In view of this long established practice in this state, and that there must otherwise often be a failure of justice, we conclude that we should recognize this power of the trial courts.

It is possible that, in some instances, a delicate and sensitive lady may suffer and endure a great wrong and injustice rather than present her cause to any court for a public investigation which would require her to allege in her petition and detail in her testimony facts in regard to the condition of her person which her sense of delicacy would forbid her doing. In such case she must elect before bringing her action whether she will bear the ills she has or fly to others that she knows not of. In bringing

her action she must declare in public fashion the conditions to be investigated, and the law requires that in any legal investigation of facts the best evidence available must be produced. She may decline to present such conditions for investigation; but, if she does bring them before the court, she cannot dictate the means of investigation by selecting such expert witnesses as she may have reason to suppose have opinions favorable to her cause, and rejecting those that might form contrary expert opinions upon ascertaining the facts. In modern times the medical profession has the benefit of skilful women physicians, and ordinarily, other things being equal, such physicians ought to be preferred when reasonably practicable, if desired by the woman to be examined.

If an application is made for the purpose of embarrassing or coercing the plaintiff, the trial court will be quick to discover that purpose, and will order it only under conditions above indicated, and when it clearly appears that a condition exists that can be definitely determined by such examination and cannot be satisfactorily determined without it.

WRIT DENIED.