ENA F. LIPPINCOTT, APPELLEE, V. HARVEY R. LIPPINCOTT
APPELLANT.

13 N. W. 2d 721

FILED MARCH 17, 1944.   No. 31729

*Dryden & Jensen* and *J. L. Grimm*, for appellant.

*James G. Mothersead, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE,
YEAGER, CHAPPELL and WENKE, JJ.

WENKE, J.

This divorce action was commenced in the district court

·for Scotts Bluff county by Ena F. Lippincott, as plaintiff, against Harvey R. Lippincott, as defendant. From a decree in favor of the plaintiff, the defendant appealed to this court where the decree of divorce was affirmed but the case was returned to the district court with directions to determine the amount of permanent alimony. *Lippincott v. Lippincott,* 141 Neb. 186, 3 N. W. 2d 207, 140 A. L. R. 901.

The mandate of this court directed the "district court to. take additional evidence as to the fair value of all of the property owned by the parties as of the date of the decree (March 11, 1941), the sources from which it came, the assistance plaintiff rendered in the accumulation thereof, and to determine the legal claims of other relatives upon the property of the defendant Harvey R. Lippincott, and to award such permanent alimony as the law and the evidence warrant."

Further hearing was had in the lower court pursuant thereto and from the award of permanent alimony and the allowance of attorneys' fees, the defendant has again appealed to this court. For the purpose of this opinion the appellee will be referred to as the plaintiff and the appellant as the defendant.

While the case was returned to the trial court for the purpose of taking additional evidence to determine and award such permanent alimony as the law and the evidence warrant, however, the defendant has raised certain legal questions which must necessarily be disposed of before a discussion of the facts.

Upon return of the case to the district court the defendant made a motion for ·change of judge or venue together with a showing in support thereof and claims the trial court abused its discretion in failing to sustain this motion. That the defendant may, in good faith, make such a motion is without question. *Le Hane v. State,* 48 Neb. 105, 66 N. W. 1017. However, the showing made fails to come within the provisions of section 27-315, Comp. St. 1929, as to the disqualifications of judges, nor is it sufficient to entitle the defendant to a change of venue under section 20-410, Comp.

St. 1929. There is also a reason why the matter is immaterial here. This is an action in equity and under our statutes is tried *de novo* in this court.

It appears from the decree of August 14, 1943, that the court inspected the lands located in Scotts Bluff county. The defendant claims this to be an abuse of discretion on the part of the trial court in view of the fact that it was done without the knowledge or consent of the parties or their counsel, and because the court examined only a part of the premises involved. A judge, in the exercise of his discretion, may view the premises, or a part thereof, without the consent of the parties. In doing so it is better practice to inform the parties and their counsel that he intends to do so and, in so far as it is practical, make such inspection in their presence or with an opportunity for them to be present. However, a failure to do so will not necessarily constitute an abuse of discretion. *Carter v. Parsons,* 136 Neb. 515, 286 N. W. 696; *Taxpayers' League v. Wightman,* 139 Neb. 212, 296 N. W. 886. Under the facts of this case we do not find that the court would have abused its discretion even though it had made such inspection without notice to the parties or their counsel. However, the record shows the defendant to be in error as to this contention. The journal of the court's order in overruling defendant's motion for new trial states that the judge had, in open court, announced his intentions to view the premises. "The transcript imports absolute verity, and cannot be impeached. If incorrect, or if it fails to speak the truth, the correction must be made in the district court and not here." *Ford v. State,* 46 Neb. 390, 64 N. W. 1082.

The defendant further contends the court was without jurisdiction to transfer real estate. Under the provisions of section 42-321, Comp. St. 1929, it is in the discretion of the court to award to the innocent party a share or interest in the real estate of the guilty party. *Gaster v. Estate of Gaster,* 92 Neb. 6, 137 N. W. 900. As stated in *Maxwell v. Maxwell,* 106 Neb. 689, 700, 184 N. W. 227: "It is too firmly established in the jurisprudence of this state to be ques-

tioned that in a divorce suit, where the court has jurisdiction of the parties, it has power to adjust all their respective property interests." See, also, *Bigelow v. Bigelow*, 131 Neb. 201, 267 N. W. 409; *Resnick v. Resnick*, 137 Neb. 256, 288 N. W. 816.

The principle contention of the defendant is that the amount of alimony awarded and the attorneys' fees allowed are excessive. The history of the marriage relationship of the parties and the nature of the causes of their marital troubles are sufficiently set forth in *Lippincott v. Lippincott, supra*, and will not be repeated in this opinion. They have necessarily been reviewed in this proceeding in a study of the whole record in order to determine the rights of the parties. The matter of fixing the amount of alimony in a divorce action is always to be determined by the facts of each case. As stated in *Phillips v. Phillips*, 135 Neb. 313, 281 N. W. 22: " * * * the court will take into consideration the estate of each party at the time of the marriage, and their respective contributions since, the duration of the marriage, the wife's loss of her interest in the husband's property by virtue of the divorce, the social standing, comforts and luxuries of life which the wife would probably have enjoyed except for the enforced separation, the conduct of the parties leading up to the divorce, and to which party the divorce is granted, their age and condition of health, and all other facts and circumstances, and award an amount in alimony which appears to be fair and equitable between the parties." See, also, *Swolec v. Swolec*, 122 Neb. 837, 241 N. W. 771. And in considering the matter of alimony we will take into consideration all properties acquired by the parties during their marriage. *DeVore v. DeVore*, 104 Neb. 702, 178 N. W. 621; *Nathan v. Nathan*, 102 Neb. 59, 165 N. W. 955.

The record discloses that the defendant came to Lyman, Nebraska, with his parents in 1916. The father had purchased an improved 80 acres, being the north half of the northeast quarter of section 1, township 22, range 58, in Scotts Bluff county, Nebraska, in 1915. In 1916 he pur-

chased the south half of the northwest quarter of section 6, township 22, range 57. This farm became the family homestead. On October 30, 1921, the defendant, then having arrived at the age of 21 years, was married to the plaintiff, who was then 18 years of age. They made their home with the defendant's family which then consisted of his father, mother, who at the time was ill, and a younger brother and sister. The mother died on June 2 of the following year. The plaintiff, from the time of the marriage, took charge of the household and did the household work necessary in the operation of the farm and helped carry on other work of the defendant. She was, during the entire period that they lived together, a capable and industrious wife who helped in every way possible in acquiring the property which they accumulated.

In the fall of 1922 the defendant, having acquired some $2,000 to $2,500 of personal property, entered into a partnership with his father. The father put in all the property he then owned and the son whatever property he had. The son was to take charge of and operate the farm and they were to share the earnings on a fifty-fifty basis. Commencing with 1923, when they began irrigating this land, it appears that the partnership of father and son was very successful financially. They proceeded to acquire additional real estate holdings in Scotts Bluff county. In 1925 they purchased the north half of the southwest quarter of section 6, township 22, range 57; in 1929 they purchased the north half of the northwest quarter of this same section; and in 1930 they purchased the school-land lease on the southeast quarter of the southeast quarter of section 36, township 23, range 58. All of the lands acquired up to this point are referred to as the home place. They also acquired the southwest quarter of section 11, township 22, range 57, in 1930; in 1931 or 1932 they purchased the west half of the northwest quarter, the northeast quarter of the northwest quarter, and part of the southeast quarter of the northwest quarter of section 23, township 22, range 57; and in January of 1933 they purchased the northwest quar-

ter of section 17, township 22, range 57. During the exist-
ence of the partnership the father sold some other lands he
owned and also inherited some money, the proceeds of
which he deposited in the partnership account and it was
used as part thereof. During this same period the build-
ings on the home place were remodeled and repaired and
new buildings constructed.

On February 11, 1933, the defendant and his father dis-
solved their partnership. In consideration of the defend-
ant agreeing to make certain payments to him of $250 semi-
annually as long as he lived, and in case of his death to his
then wife Phillipina the sum of $150 semiannually during
her life if she should survive him and as long as she re-
mained his widow; to pay the premium of $243.10 per an-
num, less dividends, on a certain insurance policy; to con-
vey certain real estate in Wyoming to his brother Harold,
which he did, the father deeded and assigned all his inter-
ests in and to the real estate hereinbefore described and
transferred all personal property owned by the partnership
to the defendant.

After the partnership was dissolved the defendant pur-
chased the southwest quarter of section 12, township 22,
range 58, in Scotts Bluff county, and the southwest quarter
of section 16, township 9, range 13, in Buffalo county, Ne-
braska, in 1936. In 1937 he purchased the northeast quarter
of section 21, township 9, range 13, in Buffalo county and
in 1938 the northwest quarter of said section 16, township
9, range 13, all of which real estate the parties owned on
March 11, 1941. In addition to this real estate the defend-
ant owned personal property located on the lands in Scotts
Bluff county and likewise personal property located on the
lands in Buffalo county, all of which were used in the oper-
ation of these farms. Also, certain insurance policies that
had a cash surrender value of $4,235 and claims against the
Great Western Sugar Company, government benefit pay-
ments, and other rents and crops.

Pursuant to a certain purported property settlement en-
tered into on February 8, 1937, the plaintiff obtained a

Pontiac sedan, a residence property in the city of Scottsbluff, Nebraska, described as lot 5, block 2, Sixth Addition, the household furniture and furnishings in the home place and $900 in cash. Pursuant thereto additional cash payments were made to the plaintiff. These cash payments were necessary for the maintenance and support of the plaintiff and the children for the period during which they were made.

It appears from the record that the defendant owes $7,-000 in the form of a mortgage on some of the Scotts Bluff county land, $23,970.28 on the Buffalo county land, taxes on all of the lands in the sum of $3,935.33, $5,186.46 as a result of irrigation pumps and wells installed on the Buffalo county land, a balance of $350 on the school-land lease and the present value of the remaining insurance premium payments and the semiannual payments due either his father or stepmother, as the case may be, as provided in the agreement entered into with his father upon the dissolution of their partnership. These have a present value of approximately $5,700.

We find the evidence of the defendant as to the indebtedness claimed to be owing to his present wife's mother entirely insufficient to establish such a debt. With reference to the indebtedness of $9,165 as evidenced by the chattel mortgage of June 7, 1940, to the Scottsbluff Production Credit Association of Scottsbluff, which was used to raise the 1940 crop, the evidence is not clear as to what part, if any, of this remains unpaid. It is apparent that the defendant deliberately made evasive answers or denied knowledge of matters affecting his indebtedness, crops, rents, etc., which are entirely within his own knowledge and thereby prevented the court from receiving all of the information it needed with reference thereto. The record as to the amount still owing defendant on his claims against the Great Western Sugar Company and for government benefit payments arising out of the 1940 crop is not very satisfactory. In view of what evidence is in the record and since they all arise out of the 1940 crop, we will consider them as offsetting each other.

Under the decree entered by the trial court on August 14, 1943, the plaintiff was awarded the northwest quarter and the north half of the southwest quarter of section 6, township 22, range 57; the north half of the northeast quarter of section 1, township 22, range 58, and the school-land lease to the southeast quarter of the southeast quarter of section 36, township 23, range 58, all in Scotts Bluff county and referred to as the home place, same to be clear and free of all encumbrances and taxes, including the taxes for the year 1942. This is in addition to the property received under the purported settlement which includes the residence in the city of Scottsbluff described as lot 5, block 2, Sixth Addition. That the defendant be required to clear the title to said property of any claim by reason of a purported deed given to his present wife, Virginia. That defendant be further required to secure a release from his father and stepmother of any claim they may have in or to said premises. That in case of his failure to do so it makes provision to secure the plaintiff for any payments she may be required to make by reason thereof. That the plaintiff have the rents from real estate awarded to her for the year of 1943 and all years subsequent thereto and allow plaintiff's attorneys a fee of $3,000.

As to the value of this property there is a very wide discrepancy between the witnesses for the plaintiff and those for the defendant, especially the values of the defendant himself. Considering the evidence offered by the plaintiff, the court allowed her, including the house and car she received in 1937, approximately 50 per cent of their property as of March 11, 1941. In considering the evidence offered by the defendant, the court allowed the plaintiff somewhat over 60 per cent. The decree permits the defendant to have all of the income from the premises awarded plaintiff during the years 1941 and 1942. That this was a very substantial amount is indicated by the fact that the gross income from the home place and the Brown land in Scotts Bluff county during the year 1941 was in excess of $35,000. We conclude that the award is somewhat too high and that it is

also in error in seeking to require the father and stepmother to release whatever rights they have in and to the premises by reason of the agreement with the defendant entered into at the time the partnership was dissolved. The decree is vacated in so far as it requires the defendant to obtain a release from his father and stepmother as to any rights they may have by virtue of this agreement. It is modified to the effect that commencing with and including 1943 the plaintiff be required to make the semiannual payments to either the father or stepmother, as the case may be. The defendant is required to make payment of all insurance premiums provided for in the declaration and acknowledgment of trust. In case either party is required to make any of these payments that are charged to the other, the party making such payment shall be subrogated to all the rights provided under the agreement as against the property charged therewith and awarded to the other, and in addition the party charged therewith shall be personally liable therefor.

Considering the legal questions involved, the amount of work necessary in preparing the case for trial due to its nature, the duration of the trial at both hearings and matters preliminary thereto and the amount involved, we do not think the amount of the attorneys' fee allowed is excessive. In addition thereto plaintiff is allowed an attorneys' fee in this court of $500, same to be taxed as costs. That all costs on this appeal are to be taxed to the defendant.

As modified, the decree of the district court is affirmed.

AFFIRMED AS MODIFIED.