JOSEPH C. KRSKA, APPELLANT, V. COUNTY OF SARPY, APPELLEE.

14 N. W. 2d 194

FILED APRIL 21, 1944. No. 31679.

*James J. Krajicek*, for appellant.

*Guy E. Tate, contra.*

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

SIMMONS, C. J.

Plaintiff here seeks by separate actions to recover damages to crops occasioned by rain waters flooding his lands in the years 1941 and 1942, alleging that the same were caused by the negligent construction of a highway by the defendant. By stipulation the cases were tried together. Trial was had to a jury and separate verdicts for the defendant had. Plaintiff appeals, both causes being presented in this appeal. We affirm the judgment of the trial court.

The petitions in the two cases are identical, except as to the dates of the rainfall and the allegations of damages, which are different for the two years. The answers and replies are identical with one exception to be mentioned later.

Plaintiff alleges that he owns land in Sarpy county, intersected by the Papillion Creek Drainage Ditch; that a road known as 48th street lies directly east of the land of the plaintiff; that defendant in 1938 constructed the road and raised the same from two to four feet above the level of the adjacent lands, including plaintiff's, and negligently refused to construct sufficient culverts through the grade of the road which would have allowed surplus water to flow in its natural course, and as a result the same was forced back by the grade of the road upon the lands of the plaintiff; that on September 27 and 28, 1941 (June 19 and 20, and July 19, 1942, in the second action) rain fell upon the plaintiff's and adjoining lands, and because of the defendant's failure to provide and maintain adequate culverts through the grade of the road, the natural flow of the rain water was obstructed, forced in large and unnatural quantities upon his lands, where it remained for several weeks to the material damage and destruction of plaintiff's crops; that it was the duty of defendant to construct and maintain sufficient culverts in said road to permit the natural and normal fall of rain water to pass down and through the natural watercourses,

and to maintain the road so as to permit the rain water to flow in its natural course and be drained from plaintiff's land; and because of defendant's failure to perform its duty, said waters were forced back upon plaintiff's land to his damage.

Defendant, by its answer, denied generally and alleged that sufficient culverts had been placed in the roadway to drain said lands of all natural flow of rain water; and that if damage was caused to plaintiff, it was the direct and proximate result of the acts of the plaintiff in changing the natural flow of the water on his land by building dikes across Papillion creek, by constructing a ditch across his lands intersecting Papillion Drainage ditch, and by failure to maintain the drainage ditch dikes and by plowing them down.

Plaintiff, by reply, denied any allegations of the answer that controverted the allegations of his petition.

Plaintiff makes no complaint here of the instructions submitting the issues to the jury, but rather argues that the jury's verdict is so contrary to the evidence, when measured by the instructions, as to be clearly wrong and requiring a reversal.

The trial court instructed the jury that the burden was upon the plaintiff to prove by a preponderance of the evidence: "1. That the natural drainage from plaintiff's land was from the northwest to the southeast across 48th Street Highway. 2. That said defendant, by raising the grade of 48th Street Highway from two to four feet, and its failure and neglect to construct and maintain sufficient culverts under and through said grade to allow surplus water from plaintiff's land, during normal rain storm, to flow in its natural course, obstructed and forced flood waters in large and unnatural quantities upon plaintiff's land damaging and destroying his crops. 3. The damages plaintiff has sustained and the amount thereof for said years or each of them."

The jury were further instructed that "it was the duty of the defendant to so construct and maintain said highway as

not to interfere with the natural drainage of plaintiff's land, and to provide sufficient culverts in and across said highway to allow ordinary flood waters from plaintiff's land to follow the natural course of drainage."

We review the evidence in the light of the established rule that a verdict of a jury in a law action based upon conflicting evidence will not be disturbed on appeal, unless clearly wrong. *McCown v. Schram,* 139 Neb. 738, 298 N. W. 681.

Plaintiff's land lies in a valley at the lower end of a drainage basin comprising some 135,000 acres. This land was naturally drained by Papillion creek. It has been artificially drained by a drainage ditch, into which there have been added additional drainage burdens by other developments in the upper reaches of the basin, so that at times of heavy rainfall or floods in the basin, the drainage ditch is insufficient in size to carry the water load dumped into it.

The road, about which complaint is made, runs north and south along the east side of plaintiff's land, and is constructed of dirt taken from the sides of the highway. The channel of Papillion creek ran generally from northwest to southeast across plaintiff's land, and crossed the road running in an easterly direction. A bridge was placed across the highway at the point where the old channel crosses, and apparently has been there for many years. Farther south there is a four-foot and still farther south a two-foot diameter culvert across the road. There is evidence that these culverts, or at least one, were not kept fully open. The land involved in this action (some 80 acres) lies north and east of the old creek. The drainage ditch coming from the north intersects the creek channel just to the west of the land involved, follows south, and then runs southeast, at a distance of about a quarter of a mile southwest of the old creek channel.

There are at least three low spots in the drainage ditch bank to the west of plaintiff's lands. Plaintiff had built a dike or irrigation ditch running east and west to the north of the land in question, which ran up to the drainage ditch

and into which, on occasion, he pumped water from the drainage ditch. Plaintiff had also built three dikes across the creek channel, one at the drainage ditch, one to the east thereof, and one just west of the road in question, and created ponds sufficient to propagate fish in them. To the east of the road, and below and not on plaintiff's land, the creek bed had been filled in with sediment, old trees, car bodies, etc., so that the flow of water in the natural channel there was greatly retarded. The land involved in this action sloped naturally from the northwest to the southeast. Along the south border (being the channel of the creek), the land sloped toward the creek and some distance out, away from it. To the north of the land involved was high ground so that a part of this land was lower than the land on either side, and did not have complete natural drainage. The land to the east of the road in places was as high as, and in places higher than, the plaintiff's land to the west of the road.

The defendant rebuilt the road in either 1936 or 1938. It was raised more in the low places than in the high places. Plaintiff's witnesses fix the increased height at from two to four feet. The men who built the road fix the original increase at from 16 inches to two feet. Actual measurements, made by test diggings at the time of the trial, fix the increase at from eight inches to two feet and the average at 17 inches. Additional culverts were not placed in the roadway. When the road elevation was raised, a ditch of substantial size was dug along the west side of and parallel to the road leading to and ending in the old channel at the bridge.

When the heavy rains came, not only the plaintiff's land, but the whole area of low land was flooded. That situation had existed at flood periods for years before the highway was improved. Plaintiff introduced pictures showing that, immediately following the 1942 rains, the land on both sides of the road was under water and the roadway a narrow strip of land leading out into the water. Other pictures show the entire roadway under water for a considerable

distance in the lower part of the valley. Plaintiff's theory and testimony were that the roadway, after the new construction, retarded the drainage and held back the waters on his lands for periods up to three weeks; whereas, before it had been but periods of hours before the water subsided. This evidence was disputed. Defendant's evidence was that this water came from the higher elevations, not on plaintiff's lands; that it drained off more quickly than plaintiff claimed; that it was not drained off because of the obstructions placed in the old channel on plaintiff's lands and below his lands; that the ditch alongside the road furnished as good or better drainage than the natural drainage into the creek, and that considerable water of necessity remained on plaintiff's land, because of natural depressions and the dikes across the channel of the natural creek drain. Defendant's expert witnesses testified that the roadway did not affect the crest elevation of the flood waters, and that the roadway did not have anything to do with holding the flood waters or retarding the drainage. The trial court sent the jury out to view the premises. They had the advantage of that observation. Under this evidence we cannot say that the jury's verdict was wrong.

Plaintiff complains that the court in its instructions referred to "culverts and dikes," and seems to charge that the answer of defendant was changed "after trial" to read "dikes." There is nothing in the record here to show any change in the pleadings. It has long been the rule that "The transcript of a record filed in this court for the purpose of appeal imports absolute verity, and in considering the appeal must be treated as the sole and exclusive evidence of the facts." *In re Estate of Piel*, 141 Neb. 783, 4 N. W. 2d 875. See *Lippincott v. Lippincott*, ante, p. 486, 13 N. W. 2d 721.

The transcript shows that in the answer in one case, defendant stated in part that plaintiff's damage, if any, was caused "by the building of a *dike* across the Papillion Creek" and in the other answer "by the building of *dikes* across the Papillion Creek." Plaintiff testified on cross-ex-

amination, without objection, that he built "dikes" across the creek and indicated the location of three of them. There was no dispute at the trial, or distinction made between "dike" and "dikes." We see no merit in the contention that prejudicial error resulted.

The judgment of the trial court is affirmed.

AFFIRMED.