STATE EX REL. ENA F. WOLSKI, RELATOR, v. ELDRIDGE G. REED, RESPONDENT.

19 N. W. 2d 545

FILED JULY 6, 1945. No. 31967.

*Mothersead & Wright* and *Hamer, Worlock, Randall & Tye,* for relator.

*Minor & Minor* and *Dryden & Jensen,* for respondent.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, and WENKE, JJ., and POLK, District Judge.

WENKE, J.

This is an original action brought for the purpose of securing a writ of mandamus to compel the respondent, Eldridge G. Reed, judge of the district court for Buffalo county, to vacate and set aside a temporary injunction issued against Ena F. Lippincott Wolski on March 9, 1945.

For the purpose of a clearer statement of the facts certain of the parties will be referred to by their first name: Ena F. Lippincott Wolski, who was the first wife of Harvey R. Lippincott, as Ena; Virginia Lippincott, the second wife of Harvey R. Lippincott, as Virginia; Harvey R. Lippincott, the husband of both, as Harvey; James W. Lippincott, the father of Harvey, as the father; Phillipina Zimmerman Lippincott, the stepmother of Harvey, as the stepmother; and Harvey Richard Lippincott, Jr., a son of Harvey and Ena, as Richard.

The litigation out of which this action arises had its beginning on February 26, 1937, when Ena obtained a divorce from Harvey in the Nevada courts. Harvey then married Virginia on November 4, 1937. Thereafter, on April 5, 1940, Ena commenced an action in the district court for Scotts Bluff county against Harvey to have the Nevada divorce decree declared void and to obtain a divorce and alimony. Decree was entered therein on March 11, 1941, in favor of Ena finding the Nevada decree void, granting her a divorce and awarding her permanent alimony in the form of an award of certain lands located in Scotts Bluff county.

Harvey and Ena had accumulated considerable land located in both Scotts Bluff and Buffalo counties. Part of the land located in Scotts Bluff county was awarded to Ena by the decree of March 11, 1941. During the trial of the case deeds from Harvey to Virginia of all the lands in both counties, bearing the date of January 20, 1940, were placed of record. The deed to the Buffalo county land was recorded on March 3, 1941, and the deed to the Scotts Bluff county land on March 6, 1941. Thereafter, on March 7, 1941, Virginia deeded all these lands back to Harvey. These deeds were deposited with Judge Perry of the district court for Scotts Bluff county. With the entry of the decree of March 11, 1941, the deed to the Scotts Bluff county land was recorded on the same day. However, the deed to the Buffalo county land was not recorded until February 1, 1945, during the hearing on the application for the temporary injunction.

Harvey appealed from the decree of March 11, 1941, to this court where the judgment of the lower court, holding the Nevada decree void and granting Ena an absolute divorce, was affirmed but the matter of awarding certain property as permanent alimony was reversed for further hearing. This opinion was released on March 27, 1942, and will be found reported as *Lippincott v. Lippincott*, 141 Neb. 186, 3 N. W. 2d 207.

On May 26, 1942, Virginia commenced the action in the

district court for Buffalo county against Ena, Harvey, the father and stepmother in which the temporary injunction here sought to be vacated and set aside was subsequently entered. The purpose and object of the action was to set aside the deeds she had given to Harvey to the Buffalo and Scotts Bluff county lands, dated March 7, 1941, and delivered to Judge Perry of the district court for Scotts Bluff county, and to find that she is the owner of all of said properties.

Service in this action was had on Ena in Scotts Bluff county, first by residential service and then by personal service. She filed her special appearance in response to each of the services made upon her. No ruling was had thereon at the time.

After the divorce action was returned to the district court a hearing was had to determine the amount of alimony to be awarded. On August 14, 1943, an award thereof was made whereby Ena was given part of the land located in Scotts Bluff county, described as the northwest quarter and the north half of the southwest quarter of section 6, township 22, range 57; the north half of the northeast quarter of section 1, township 22, range 58; and the school-land lease to the southeast quarter of the southeast quarter of section 36, township 23, range 58; and the rents therefrom commencing with the year 1943. For convenience this land will hereinafter be referred to as the home place.

It appears that deeds, bearing the date of April 15, 1943, were executed from Harvey to Virginia to all of the lands in both counties. The deed to the Scotts Bluff county land was recorded on April 17, 1943, but the record fails to show that the deed to the Buffalo county land was ever recorded.

Harvey appealed from the award of August 14, 1943, and as part of the supersedeas deposited with the district court for Scotts Bluff county a deed to Ena to the land in Scotts Bluff county which had been awarded her, and, commencing with 1943, an assignment to the clerk of the rents covering the same land. It appears that Harvey had leased the home place and other lands in Scotts Bluff county to Kent Lane

for a period of five years from March 1, 1941, to March 1, 1946.

On March 17, 1944, this court released its opinion, *Lippincott v. Lippincott*, 144 Neb. 486, 13 N. W. 2d 721, affirming the award of the lower court but directing Ena to make certain payments to either the father or stepmother and Harvey to make certain insurance premium payments as provided in an agreement between Harvey and his father.

This agreement, entered into by Harvey and his father on February 11, 1933, provided for certain payments to be made to the father, and then the stepmother, if she survive, and to pay an insurance premium, and made them a lien on certain property in Scotts Bluff county, including the home place.

Pursuant to the opinion, mandate was sent to the district court and judgment was entered thereon on April 20, 1944. Ena thereupon proceeded to collect the rents from the tenant, Kent Lane.

On September 7, 1944, Harvey and Virginia deeded all the Scotts Bluff and Buffalo county lands to Richard. The deed to the Scotts Bluff county land was recorded on October 16, 1944, and the deed to the Buffalo county land was recorded on September 12, 1944.

On October 13, 1944, Richard made application to and received permission from the district court for Buffalo county to be substituted as plaintiff for Virginia in the action which she had originally brought therein on May 26, 1942. On October 30, 1944, he filed his amended petition and made James W. Lippincott, Jr., Velma Lippincott Kellums, Harold W. Lippincott, C. R. Barton, clerk of the district court for Scotts Bluff county, and Kent Lane additional parties defendant. The object and purpose of the action remained the same.

On the application of Richard for an injunction against Ena the district court for Buffalo county did, on January 16, 1945, enter a temporary restraining order against her and enjoined her from entering upon or attempting to enter upon the home place in Scotts Bluff county and set the date

for hearing thereon as February 1, 1945, at 10 a. m. Notice thereof was served upon Ena in Scotts Bluff county and she filed her special appearance thereto.

On February 1, 1945, Ena's special appearance to the application was overruled and hearing had. It was during this hearing that the deed to the Buffalo county land from Virginia to Harvey, dated March 7, 1941, was recorded. After the hearing the matter was taken under advisement and on March 9, 1945, Eldridge G. Reed, district judge for Buffalo county, before whom the hearing was had, entered a temporary injunction against Ena and enjoined her from entering or attempting to enter upon the home place in Scotts Bluff county and fixed applicant's bond in the sum of $5,000. A bond was filed and approved.

As a basis or reason for the issuance of the writ the relator suggests that the court exceeded its jurisdiction for the following reasons: First, because the relator was in possession of the property and the court had no jurisdiction to enjoin her out of possession. Second, because the district court for Buffalo county had no jurisdiction of the subject matter, the lands involved in the injunction proceeding being situated in Scotts Bluff county.

For the purpose of this opinion we will assume that both propositions of relator are correct and that the district court was without jurisdiction to enter the temporary injunction.

This court has held that a judge of the district court may, if the ordinary remedy is inadequate, be compelled by mandamus to vacate or set aside an order or judgment granted by him when done without jurisdiction or authority. *State ex rel. Reynolds v. Graves*, 66 Neb. 17, 92 N. W. 144. The duty is imposed upon this court to prevent violation of law by inferior tribunals where there is no adequate remedy by the ordinary course of the law and mandamus is the appropriate remedy for that purpose. *State ex rel. Parmenter v. Troup*, 98 Neb. 333, 152 N. W. 748.

However, as stated in *State ex rel. Garton v. Fulton*, 118 Neb. 400, 225 N. W. 28: "Mandamus will not issue to review

the action of an inferior court where there is an adequate remedy at law, and the writ may not be used to usurp or take the place of an appeal or writ of error." We approve the following statement contained in *State ex rel. Cuming County Farm Bureau v. Tighe,* 124 Neb. 578, 247 N. W. 419: "In *State v. Fulton,* 118 Neb. 400, there is a concise and thorough review by Judge Good of many cases in this and other courts holding that mandamus will not lie to control judicial discretion, nor to review the action of an inferior court where there is an adequate remedy at law for review by appeal or proceedings in error. We adopt, without repeating it, the argument there."

If the court erred in the issuance of the temporary injunction this can be corrected on final hearing and, in the event the relator does not obtain the relief she thinks she is entitled to, she has a plain, adequate and speedy remedy in the due course of law by appeal to this court. Adequate bond has been provided to protect the relator against any damages she may suffer. The writ of mandamus will not issue merely to correct errors. It must appear that the relief asked for in the application can be obtained only by that means and that the relator has no adequate remedy in the due and ordinary course of the law. It is a writ that will seldom issue except when all other remedies have failed.

We have not overlooked the case of *State ex rel. Reynolds v. Graves, supra,* wherein a writ was granted requiring the district judge to vacate an order granting an injunction. The court there held: "A court or judge has no authority by a provisional injunction to transfer the possession of real or personal property from one litigant to another." However, as stated in *State ex rel. Garton v. Fulton, supra*: "The opinion in that case (*State ex rel. Reynolds v. Graves, supra*) goes further than any other opinion of this court that we have been able to find, in controlling by mandamus the action of a district judge." And we think farther than this court should ordinarily go.

Under the facts of this case, where the relator has an adequate remedy at law, is fully protected by bond as to any

damage which she may suffer and where it does not appear that any irreparable damage will likely arise, we think the writ should be denied.

WRIT DENIED.

CARTER, J., participating on briefs.