ENA F. LIPPINCOTT, APPELLEE, v. HARVEY R. LIPPINCOTT, APPELLANT.

41 N. W. 2d 232

Filed February 16, 1950.     No. 32728.

*Dryden, Jensen & Dier,* for appellant.

*F. E. Wright* and *Robert G. Simmons, Jr.,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

This is a proceeding in the original divorce action twice

previously before this court, reported Lippincott v. Lippincott, 141 Neb. 186, 3 N. W. 2d 207, 140 A. L. R. 901, and Lippincott v. Lippincott, 144 Neb. 486, 13 N. W. 2d 721. Plaintiff, Ena F. Lippincott, has remarried, and is now known as Ena F. Wolski. In the original trial, the decree awarded plaintiff an absolute divorce with certain real estate in Scotts Bluff County as alimony. Upon appeal, this court affirmed the judgment awarding plaintiff a divorce, but remanded the cause to the district court for the purpose of taking additional evidence upon the question of alimony.

On such further hearing, the same land was awarded to plaintiff in a decree, which, among other things, provided: "6. The court further finds that since the hearing in the Supreme Court and the original decree in this court, plaintiff (defendant) has purported to make conveyances of title to the said real estate above described in one Virginia Lippincott and that the defendant should be required to clear the title to the said property so that good and clear title in said premises vests in the plaintiff. * * *

"It is further considered, adjudged and decreed that the defendant be required to clear the title to the real estate hereinbefore ordered conveyed to the plaintiff of any claims of Virginia Lippincott. * * *

"It is further ordered that the court retain jurisdiction for the purpose of enforcing that part of the decree requiring defendant to clear the title of the real estate of any claim of Virginia Lippincott and to retain jurisdiction to enforce any part of the decree of this court."

Such decree was entered on the 14th day of August 1943. It was modified by Lippincott v. Lippincott, 144 Neb. 486, 13 N. W. 2d 721, in one particular which is not involved here, and on the 18th day of April 1944, the mandate of this court was filed in the district court and decree entered thereon which expressly provided that the original decree as amended "is in all other respects confirmed and remains in full force and effect." We thus

have a decree of the district court for Scotts Bluff County, affirmed by this court, expressly finding and requiring defendant to quiet the title of claims of Virginia Lippincott to the land awarded plaintiff as alimony, and a specific retention of jurisdiction by the trial court to enforce that decree.

Pending the first appeal in the divorce action, Virginia Lippincott, then claimed wife of defendant, commenced an action in the district court for Buffalo County against plaintiff herein, seeking to quiet title in Virginia Lippincott to the lands in question. In that situation, defendant not having complied with the trial court's decree to clear the title, plaintiff on August 14, 1944, filed an application in the divorce action, still pending as aforesaid, praying that defendant Harvey R. Lippincott be required to show cause why he should not be ordered to pay the taxes on the property prior to 1943, and the soil conservation and government crop payments for 1943, as theretofore ordered, and pay into court for plaintiff suitable and proper amounts to enable her to defend the action of Virginia Lippincott in Buffalo County, and to carry on and maintain an action against defendant and Virginia Lippincott to quiet title to the lands in Scotts Bluff County which had been awarded to plaintiff as alimony by the trial court.

On the 30th day of October 1944, Harvey R. Lippincott, Jr., defendant's son, on ex parte application to the district court for Buffalo County, became substituted as plaintiff therein for Virginia Lippincott, who had theretofore on September 7, 1944, joined in a deed with defendant conveying the premises to said Harvey R. Lippincott, Jr. Thereafter, various proceedings were had in the district court for Buffalo County, involving special appearances, restraining orders, injunctions, citations for contempt, and a judgment finding Ena F. Wolski guilty of contempt. Therein, the trial court ultimately enjoined plaintiff herein from maintaining her action instituted on November 23, 1945, in Scotts Bluff County, to quiet her title to

the premises. The litigation in Buffalo County did not terminate until the decisions of this court in Lippincott v. Wolski, 147 Neb. 930, 25 N. W. 2d 747, 169 A. L. R. 1236, and Wolski v. Lippincott, 147 Neb. 944, 25 N. W. 2d 754. As a result of those opinions, the litigation in Buffalo County was terminated upon jurisdictional grounds, plaintiff herein was absolved of contempt, and the injunction preventing plaintiff from prosecuting her action to quiet title in Scotts Bluff County was dissolved.

Plaintiff then proceeded with her action to quiet title until decree was obtained. In the meantime, another action had been brought by defendant's father, James Lippincott, in the district court for Scotts Bluff County, seeking to quiet title to the premises in himself. However, the trial court refused to grant him the relief sought, whereupon both cases were respectively appealed to this court where they were affirmed for failure of appellants therein to file briefs. Wolski v. Lippincott, No. 32580, and James Lippincott v. Wolski, No. 32581.

On September 23, 1948, plaintiff filed a supplemental petition in the original divorce action still pending as aforesaid, praying, in addition to the relief sought by her on August 14, 1944, that the trial court find and determine the amount due and owing to her for expenses and attorneys' fees necessitated by the aforesaid litigation, in order to protect and enforce the original decree of the court, awarding alimony to plaintiff. Defendant answered, averring, among other things, that the court was without authority or jurisdiction to enter such an order, and pleading the statute of limitations.

After hearing upon the issues thus presented, the trial court entered a judgment finding generally for plaintiff and against defendant. After reciting the history of the litigation and the necessity for the costs, expenses, and employment of counsel by plaintiff therein to clear the title to the property awarded plaintiff as alimony, and protect and enforce the judgment therefor, the court entered its judgment awarding plaintiff $1,507.28 for

expenses, $2,500 as fees for her attorney, J. C. Tye, and $12,500 as fees for her attorney, James G. Mothersead, or a total of $16,507.28.

Defendant's motion for new trial was overruled, and he appealed to this court, assigning: (1) That the trial court was without jurisdiction to enter such a judgment; (2) that the cause of action was barred by the statute of limitations; and (3) that the judgment was excessive, not sustained by the evidence, and contrary to law. We conclude that the judgment was excessive, but that the other assignments have no merit.

Defendant argued that the district court had only jurisdiction to enter a judgment for expenses and attorneys' fees during the pendency of the action for divorce, and that a reservation in the decree attempting to provide for retention of jurisdiction to enforce the decree added nothing to the court's powers, because the court in granting a divorce is authorized to give only such relief or enter such orders as are provided by statute.

In the light of that contention, we have examined the statutes and applicable authorities. In that connection, the trial court has discretionary power and authority in a divorce action to require the husband to pay any sum necessary to enable the wife to carry on or defend the suit during its pendency, and decree costs against either party. § 42-308, R. S. 1943. Actions for divorce are conducted in the same manner as other suits in courts of equity, and the trial court has authority to decree costs and enforce its decrees as in other cases. § 42-307, R. S. Supp., 1949. All judgments or orders for the payment of alimony are liens upon the property, as in other actions, and may be enforced by proceedings in aid of execution, or other action or process as other judgments. § 42-319, R. S. 1943. These enforcement remedies are cumulative and in no respect abridge any subsisting remedy or power of the court for the enforcement of such judgments and orders. § 42-320, R. S. 1943. And after a decree for alimony has been awarded, the court from time to time

on petition and hearing thereon, has authority under appropriate circumstances, to revise and alter such decree as to the payment thereof, as provided in section 42-324, R. S. 1943.

In support of his contention that the court had no jurisdiction, defendant cited Yeiser v. Lowe, 50 Neb. 310, 69 N. W. 847, and Burnham v. Tizard, 31 Neb. 781, 48 N. W. 823. Those cases are clearly distinguishable, holding merely that after a divorce suit is terminated, the attorney for the wife could not maintain an independent action at law against the husband for recovery of such attorney fees. The action at bar was not such an independent action, but a proceeding in the original action during its pendency, to obtain an allowance of expenses and attorneys' fees as a judgment for costs, necessitated in order to enforce and make effective the provisions of the court's decree, which defendant had not only refused to perform but had by his own extrajudicial conduct assumed to revise, alter, or circumvent and make of no force and effect, well knowing that he was not lawfully entitled to any such relief.

In that connection, the court retained jurisdiction of the divorce proceedings at all times, whether the decree so provided or not, to enforce its decree with regard to compliance with the award of alimony. 27 C. J. S., Divorce, § 254, p. 1032; Tucker v. Tucker, 150 Kan. 317, 92 P. 2d 26. Contrary to defendant's contention, dissolution of the marital relations by the divorce decree did not terminate the authority of the court to allow such expenses and attorneys' fees. O'Brien v. O'Brien, 19 Neb. 584, 27 N. W. 640; Brasch v. Brasch, 50 Neb. 73, 69 N. W. 392.

In Chambers v. Chambers, 75 Neb. 850, 106 N. W. 993, this court said: "It is next urged that, the plaintiff having ceased to be the wife of the defendant, it was error to allow her counsel fees in this proceeding. This proceeding is simply a continuation of the divorce suit and one of its incidents, and we think that the authority

of the court to allow counsel fees under the section of the statute last cited continues until the subject matter of the divorce suit is finally settled and determined." See, also, Cizek v. Cizek, 76 Neb. 797, 107 N. W. 1012.

In Jensen v. Jensen, 144 Neb. 857, 15 N. W. 2d 57, a divorce action, citing Earle v. Earle, 27 Neb. 277, 43 N. W. 118, 20 Am. S. R. 667, and Wassung v. Wassung, 136 Neb. 440, 286 N. W. 340, this court held: "Courts of general jurisdiction have the inherent power to do all things necessary for the proper administration of justice and equity within the scope of their jurisdiction."

In Brevet v. Brevet, 316 Ill. App. 406, 45 N. E. 2d 199, where subsequent to decree plaintiff filed a petition in the original action for enforcement of the decree and like contention was made that the court had no jurisdiction, it was said: "Petitioner in this case did not ask for any modification of the terms of the divorce decree but merely asked that the terms of that decree be enforced. See Totten v. Totten, 299 Ill. 43, where it was held that a court of equity possesses power to control the manner of the execution of its decrees. See also Bobowski v. Bobowski, 242 Ill. 524, 529, 530; Cohen v. Cohen, 291 Ill. App. 39, 49; Oglesby v. Pearce, 68 Ill. 220. In Tegtmeyer v. Tegtmeyer, 292 Ill. App. 434, 443, this court said that if a court of chancery had no power to enforce its decrees 'obviously the court would be rendered impotent and we would have neither law nor order but every one could do as he or she pleased. Of course, such a situation cannot be countenanced by the courts for a moment.' Many other cases are to the same effect." See, also, Kellogg v. Kellogg, 302 Ill. App. 604, 24 N. E. 2d 260; and Andruss v. Andruss, 144 Fla. 641, 198 So. 213, wherein it was concluded that a similar proceeding was not a "new and independent action, but incidental to and continuation of original divorce suit."

In Parker v. Parker, 22 Cal. App. 2d 139, 70 P. 2d 1003, like contention was made as in the case at bar, that the court was without jurisdiction to make such an order

since the divorce decree had become final and such allowance under the statute was only permissible during the pendency of the action for divorce. The court said: "We see no difference in principle between a case where a former wife is compelled by her former husband to defend a proceeding brought by him to modify and reduce the amount allowed for her support and one where the former husband attempts to obtain the same result by arbitrarily reducing the amount himself without seeking the permission of the court. In either case the former wife may be obliged to defend herself and the principles laid down in the cases cited and in sections 137 and 139 of the Civil Code are controlling. The matter is within the sound discretion of the court, which is a sufficient protection against the danger suggested by the appellant, that a former wife might be inclined to initiate successive and unreasonable proceedings for the purpose of harassing her ex-husband."

Also, in Slezak v. Slezak, 293 Ill. App. 489, 13 N. E. 2d 91, the court said: "It would be absurd to hold that the court * * * could modify a decree of divorce which had been entered and make such changes as equity and good conscience dictate, but that the court in the enforcement of its orders is helpless for the reason that the wife would be compelled to advance all expense money necessarily entailed by virtue of her effort to compel the divorced husband to perform his duty as directed by the court in its order." That opinion also cited with approval and quoted from Czarra v. Czarra, 128 Ill. App. 430, wherein it was said: "If it be within the power of a court under the statute * * * to allow solicitor's fees incurred in resisting a petition of a divorced husband for the reduction of alimony, we see no reason in principle or under the terms of the statute why it should not be so allowable in the case of the prosecution by the divorced wife of her right to enforce alimony."

The expenses and attorneys' fees involved herein were taxable as costs upon application therefor, and did

not require the opening or modification of the judgment for divorce and alimony. Such costs constituted no part of the original judgment on the merits, and the court had jurisdiction to act upon plaintiff's application although any order made therein was subject to review in like manner as the taxation of other costs. Allen v. Tallon, 120 Neb. 611, 234 N. W. 411. We conclude that defendant's first assignment has no merit.

Defendant argued that since the original divorce decree was entered on August 14, 1943, then in the light of section 42-319, R. S. 1943, the statute of limitations barred this proceeding by virtue of section 25-1515, R. R. S. 1943. Factually, the statute of limitations would be no defense, since as a matter of course the proceedings herein were filed within a year from the entry of such original decree, not as a new action, but merely as a continuation of and incidental to the original action. However, in any event, a decree for alimony in a divorce action is not a judgment within the meaning of sections 25-1420 or 25-1515, R. R. S. 1943. In re Application of Miller, 139 Neb. 242, 297 N. W. 91. That case involved a decree for child support, but the conclusion therein that the statute of limitations could not be interposed as a defense was premised upon like holdings in Lemert v. Lemert, 72 Ohio St. 364, 74 N. E. 194, 106 Am. S. R. 621, and Peeke v. Fitzpatrick, 74 Ohio St. 396, 78 N. E. 519, each of which involved a judgment for alimony under similar statutes. We conclude that the statute of limitations did not bar the present proceedings.

We turn then to the question of whether or not the allowances for attorneys' fees were excessive. In that regard, defendant offered no evidence contravening that adduced by plaintiff, and no contention was made with regard to the amount of expenses allowed by the court.

The general rule is that in cases where a controversy arises with relation to the allowance of an attorney's fee by the court, a determination thereof is largely within the discretion of the court, and it may be fixed by the

trial or appellate court, either with or without the aid of expert testimony as to value, although neither the trial nor appellate court can, in assessing such fees, arbitrarily ignore the undisputed evidence and findings based thereon. Allen v. Tallon, *supra;* 7 C. J. S., Attorney and Client, § 191, p. 1093. The force of the rule is conceded by plaintiff.

In Allen v. City of Omaha, 136 Neb. 620, 286 N. W. 916, it was held: "In determining the value of legal services rendered by an attorney, it is proper to consider the amount involved, the nature of the litigation, the time and labor required, the novelty and difficulty of the questions raised and the skill required to properly conduct the case, the responsibility assumed, the care and diligence exhibited, the result of the suit, the character and standing of the attorney, and the customary charges of the bar for similar services." See, also, Darnell v. City of Broken Bow, 139 Neb. 844, 299 N. W. 274, 136 A. L. R. 101; Canons of Professional Ethics of the American Bar Association, Canon 12, adopted by Rules, Supreme Court, Nebraska, Article X, page 37.

The necessity for the litigation and proceedings incidental to the original divorce action, in order to protect and enforce the trial court's original decree because of the palpable fraudulent conduct of the defendant not only by his own individual acts but also in a scheme, plan, or conspiracy with others, including Virginia Lippincott and Harvey R. Lippincott, Jr., to fraudulently and unlawfully deprive and cheat plaintiff out of the proceeds and income from her alimony judgment, is so completely reflected not only in the record now before us but also in the aforesaid Lippincott opinions of this court, all of which were interwoven and interdependent cases, that we see no need to repeat the facts relating thereto in this opinion.

The character and standing of plaintiff's attorneys were not questioned. Mr. Tye, a lawyer with many years of experience in Kearney, was employed as resident

counsel and associate of Mr. Mothersead in the Buffalo County litigation. He knew that his fees depended upon the success thereof. He rendered legal services in the office and otherwise, by checking the records and filings, conferring with and reporting to other counsel, preparing special appearances, briefing jurisdictional questions, and presenting them to the district court. He appeared in the district court several different times for a part or all of a day or two in connection with hearings upon special appearances, restraining orders, injunctions, contempt citations, and continuances, as well as attempts to obtain a hearing on the merits. Although Mr. Mothersead was not present upon several such occasions, he generally appeared as chief counsel. Mr. Tye appeared in the Supreme Court once upon an original application for mandamus. State ex rel. Wolski v. Reed, 146 Neb. 348, 19 N. W. 2d 545. Otherwise, he did not appear in this court or prepare any brief in the mandamus case or upon the jurisdictional merits of the original Buffalo County case or the appeal in the contempt proceeding. However, he did check briefs prepared therein by Mr. Mothersead, made suggestions with reference to them, and appeared as counsel thereon. He testified that $2,500 was the reasonable value of the services rendered by him, which the trial court approved and allowed.

In the light of the foregoing rules and the record, however, we believe that such allowance was excessive and an abuse of judicial discretion. We conclude that $1,000 is a reasonable allowance for Mr. Tye's services.

Mr. Mothersead is a lawyer with many years of experience in North Platte and Scottsbluff. He appeared in and prosecuted the original mandamus case as chief counsel, the original divorce action, its hearing upon remand by this court, and appeal therefrom by defendant. He also successfully protected and enforced plaintiff's alleged alimony rights in the district court, and upon appeal therefrom to this court in five other separate cases heretofore cited. In addition thereto, he success-

fully defended two forcible entry and detainer cases respectively filed by Virginia Lippincott and Harvey R. Lippincott, Jr., in the county court of Scotts Bluff County, and ultimately was required to enjoin defendant in the divorce action from trespassing upon the lands awarded plaintiff.

Without dispute, the real property awarded in the divorce decree, title to which was ultimately quieted in plaintiff by enforcement of the trial court's decree of alimony, was reasonably worth from $90,000 to $100,000 at the time this proceeding was heard. Rentals therefrom, ultimately collected for plaintiff, totalled approximately $12,000.

Prior to and during all of the aforesaid litigation, plaintiff had no other property, and little if any money with which to pay attorneys' fees and expenses. Nevertheless, Mr. Mothersead accepted employment as her attorney and continued as such to loyally protect her lawful rights, well knowing that allowances and collection for such services depended entirely upon his ultimate success in the litigation.

In so culminating the litigation, he was required to make many trips to Kearney and Lincoln from Scottsbluff. He was also required to and did prepare many pleadings and briefs and appeared upon numerous occasions in the courts for Buffalo and Scotts Bluff counties for hearings or trials on the merits, and in this court upon appeals therefrom, over a period of several years before success ultimately prevailed. To enumerate such services and proceedings at length would unduly prolong this opinion.

He testified that $12,500 was the reasonable value of the services rendered by him, which the trial court approved and allowed.

We are convinced that the reasonable value of Mr. Mothersead's services in the divorce action itself and all of the other incidental litigation was $12,500. However, plaintiff has already been awarded and received $3,500

attorney's fees in the original divorce action, which we believe the trial court should have considered in making the allowance here involved.

In the light thereof, the rules heretofore set forth, and the record before us, we conclude that an additional allowance of $9,000 is a reasonable allowance for Mr. Mothersead's services.

For the reasons heretofore stated, the judgment is affirmed as modified, and the cause is remanded with directions to award plaintiff $1,507.28 as expenses, $1,000 as attorney's fees for Mr. J. C. Tye, and $9,000 as attorney's fees for Mr. James G. Mothersead, and enter a judgment for the total thereof, $11,507.28. Costs taxed to appellant.

AFFIRMED AS MODIFIED.