WILLIAM WUNRATH, APPELLEE, v. PEOPLES FURNITURE & CARPET COMPANY, APPELLANT.

FILED DECEMBER 19, 1916.    No. 19667.

1. **Master and Servant:** INJURY TO SERVANT: SUFFICIENCY OF EVIDENCE. Evidence examined, and *held* sufficient to support the verdict of the jury.

2. ———: ———: INSTRUCTIONS. The instructions set out in the opinion, when construed together, *held* free from error.

3. **Trial:** INSTRUCTION TO DISREGARD EVIDENCE. A trial court is not warranted in giving an instruction to a jury that, if they believe any witness has intentionally sworn falsely to any material matter in the case, they are at liberty to disregard the entire testimony of such witness, unless the evidence tends to show that a witness was wilfully guilty of false swearing on a matter material to the issues.

APPEAL from the district court for Douglas county: JAMES T. BEGLEY, JUDGE. *Affirmed.*

*Mahoney & Kennedy* and *Nolan & Woodland,* for appellant.

*Brome & Brome* and *A. H. Burnett, contra.*

MORRISSEY, C. J.

Defendant appeals from a judgment entered in the district court for Douglas county awarding plaintiff $8,500 damages for injuries sustained while in defendant's employ. Defendant first contends that the verdict is contrary to the evidence. Defendant was engaged in the furniture business, occupying an entire building. This building was equipped with an elevator running from the basement to the top of the building. The main sales-room was located on the ground floor. The sales-room occupied the entire ground floor, except that at one end there was a balcony, and in the northwest corner a partition inclosing the elevator shaft, together with a corridor leading past the shaft to a toilet room. The corridor was about five feet in width, and it was entered from the main room by a door which was the full width of the corridor. When this door was opened it swung into the corridor. The elevator is located opposite the entrance, so that one entering the corridor from the main floor would stand immediately in front of the elevator door, or the elevator shaft, if the door was open. The door of the elevator shaft was the full width of the corridor and reached from the floor to the ceiling. This was a double door with hinges attached on one side of the opening, and also hinges in the middle so that one half of the door might be opened while the other half remained closed.

Plaintiff visited this building for the first time May 24, 1910, and made an arrangement with the assistant manager to take employment as a porter or janitor. The assistant manager gave him a set of written instruc-

tions, and also told him that his brooms, brushes and implements with which he would be required to work were kept in the toilet room mentioned, and went with plaintiff through this corridor into the toilet room and showed him where they were to be found. Plaintiff reported for duty the next morning when the store opened. In obedience to the instructions he received the day before, he started for this toilet room, intending to leave his dinner pail and to secure a broom with which to begin work. He passed through the door leading into the corridor, which he says was closed, and immediately fell into the elevator shaft, a distance of 12 or 15 feet, receiving injuries to his head, shoulder, back and knee.

It is alleged that, when plaintiff opened the door leading from the main store into the corridor, the corridor was unlighted; that the door opening from the corridor into the elevator shaft was open, and the opening to the elevator shaft unguarded; that plaintiff did not know there was a door leading from the corridor into the elevator shaft, and, because the corridor was unlighted, plaintiff was unable to discover the danger, and that the injuries received were due to the failure on the part of defendant to advise him of the location of the elevator shaft, and in leaving the door thereto open and unguarded.

Defendant denies each of these charges of negligence, and insists that plaintiff has not only failed to prove these allegations by a preponderance of the evidence, but that they are disproved by a preponderance. There are, however, certain undisputed facts which may be considered in connection with the disputed testimony. It is admitted that Wunrath applied to defendant the day before the accident and secured employment; that its assistant manager told him that the brooms and brushes were to be kept in this toilet room at the end of the corridor; that on the morning of the accident plaintiff arrived at the store for the purpose of going to work, and that he went into this corridor for the pur-

pose of leaving his hat, coat and dinner bucket and procuring his brushes according to the instructions given by the assistant manager the day before; that, upon his failure to return, the assistant manager went to look for him and found him, together with his hat, coat and dinner bucket, lying at the bottom of the elevator shaft. He was then unconscious and remained in that condition for several hours.

Wunrath testified that he stepped through the door leading into the corridor, turned around to close the door behind him, and was immediately precipitated to the bottom of the elevator shaft. He does not say that the door to the elevator shaft was open; but, if it were closed, he could not have fallen into the elevator shaft without first opening the door. He testified that the hall was unlighted. Defendant has offered testimony going to show that the door to the elevator shaft was equipped with coil springs which automatically closed the door and kept it closed, except when it was held open. The assistant manager testified that, when he went in search of plaintiff, he found the door closed. There is also testimony of other employees that the door was equipped with springs which automatically closed it. The door extended from the floor to the ceiling, and the knob by which it was manipulated in opening and closing was fastened to the door six feet or more above the floor. If the door was closed when plaintiff stepped into the corridor, before he could fall down the shaft he would have to reach up, grip this knob, open the door, and then step into the shaft. There is no reason why he should have done this, and it does not stand to reason that he would do so. On the other hand, if the hall was unlighted and the door open, his story is entirely probable. The plaintiff and the assistant manager both testified that he was shown into the toilet room the day before, so he knew its location. When he stepped into the corridor, there can be no question but that he intended to deposit his dinner bucket and his coat and hat in the toilet room,

but he never reached that room. These articles were found with him at the bottom of the shaft. The night watchman testified that the elevator doors were closed when he visited the toilet room sometime during the night. However, there was nothing to expressly direct his attention to that fact. There is more or less discrepancy in the testimony of witnesses of the defendant as to the construction of the door and the springs by which they were supposed to be closed.

A witness named Smith, who was in the employ of defendant at the time the accident occurred, testified that half of the door could be opened and placed in such a way that it might remain open. H. B. Wunrath, a son of plaintiff, visited the store soon after the accident, with Dr. Whinnery, and gave the following testimony: "Q. What I want to know is, would the east half of the door stay open if it was pulled open? A. Yes, sir; it was open when he stood there. Q. And stood there? A. Yes, sir. Q. Without anybody holding it? A. Yes, sir." The evidence of Dr. Whinnery was that he, in company with young Wunrath, inspected the doors soon after the accident; that he opened one-half of the door, and that it remained open, and he explained his recollection: "Q. Did you have the whole door open, or did it stay open on its own volition? A. No, sir; it stayed itself. How I remember that I opened the door so well was, I commenced to feel for the knob. That place was not well lighted, and I commenced to feel for the knob. And he said 'higher,' and I went up and finally got the knob. Q. How high up was the knob? A. Quite a way to reach. The door could open perfectly easy, and I stood there and tipped that door open. There wasn't anybody guarding the door. Q. Nobody held the door open? A. No, sir." Dr. Whinnery subsequently visited the store with another son of the plaintiff. He testified that on this occasion the assistant manager opened the door, and that the door stood open without being held or fastened in any way. On the whole, the testimony supporting plaintiff's theory

that the door was open seems sufficient to warrant the trial court in submitting that question to the jury, and is sufficient to support the jury's finding thereon.

Defendant also complains of the instructions given by the court, and points out that in stating the issues, in instruction No. 1, the court told the jury: "Plaintiff charges defendant with negligence in three particulars: First, that defendant failed to inform him of the existence of said elevator shaft; second, failed to cause said corridor to be lighted; and, third, that defendant negligently caused and permitted said elevator door to be left open and the shaft unguarded."

Instruction No. 2 is as follows: "The burden of proof in this case is upon the plaintiff to establish by a preponderance of the evidence: First, that the defendant was guilty of negligence in one or more of the particulars charged in the petition; second, that plaintiff's injuries, if any, were the direct result of negligence of the defendant charged and proved; and third, the character and extent of his injuries, and the amount of his damages, if any, resulting therefrom. If all of the above matters are so established to the satisfaction of the jury, then your verdict should be for the plaintiff, unless you find, from a preponderance of the evidence, that the plaintiff was guilty of negligence contributing to cause his injuries. The burden is also upon the plaintiff to establish, by a preponderance of the evidence, that the elevator door in question was open at the time plaintiff entered the corridor."

Defendant criticizes this instruction, insisting that it told the jury that, if any one of the acts of negligence designated in instruction No. 1 were found to exist, they might return a verdict for plaintiff. This instruction must be construed in connection with the other instructions given, and if, when they are all taken together, the jury is fairly instructed the instructions will be upheld.

Instruction No. 4 told the jury: "If you find from a preponderance of the evidence that, at the time plaintiff entered the corridor in question, the door leading into the elevator shaft was open and unguarded, and that defendant had not used proper care to prevent such condition, and that plaintiff did not know that said door was open, and did not, in the exercise of ordinary care, discover that fact in time to avoid the accident, then your verdict should be for the plaintiff. On the other hand, if you find from the evidence that, at the time plaintiff entered the corridor, the door leading into the elevator shaft was closed, or, if you find that said door was open, and you further find, from a preponderance of the evidence, that the plaintiff, in the exercise of ordinary care, should have discovered that fact in time to have avoided his injuries, then your verdict should be for the defendant; or, if you find from the evidence that the plaintiff himself opened the door leading into the elevator shaft, your verdict should be for the defendant."

The second paragraph of the third instruction, which reads: "If you find, from a preponderance of the evidence, that leaving the door into the elevator shaft open and unguarded rendered passage through such corridor by a person using ordinary care unsafe, then it was the duty of the defendant to exercise ordinary care to keep such door shut, and a failure to do so would be negligence"—is criticized because, it is said, this paragraph assumes that the door to the elevator shaft was open, and takes from the jury this important question of fact. If this paragraph of the instruction could be segregated from the other instructions, it might be given the interpretation which defendant would have us give it. But instruction No. 4 expressly told the jury that, if they found from the evidence that the elevator shaft was closed when plaintiff entered the corridor, or that he opened the door himself, the verdict should be for defendant. The criticism directed against instruction No. 5 is along the same line.

100 Neb.—35

Instructions are to be construed together, and when these paragraphs are read in connection with the other paragraphs, it is clear that every disputed question of fact was properly submitted to the jury.

The next assignment deals with the court's refusal to instruct the jury that, if they believed any witness had intentionally sworn falsely to any material matter in the case, they would be justified in disregarding the entire testimony of such witness. The general rule is that the trial court is not warranted in giving such an instruction, unless the evidence tends to show that a witness was wilfully guilty of false swearing on a matter material to the issues. It therefore devolved upon the trial court to determine whether, under the facts and circumstances, there was evidence tending to show that any witness whose evidence was submitted to the jury did wilfully swear falsely. In determining this question, it was the duty of the court to bear in mind that wilfully false swearing is not lightly to be imputed to a witness. Discrepancies, conflicts and contradictions in evidence are more often honest mistakes due to faulty observation, imperfect recollection, or varying impressions which the facts may have made on the mind. Before a court is warranted in giving this instruction it must find something in the appearance, demeanor or manner of a witness while testifying, or such conflict and contradiction between him and the other witnesses in the case, or such an inherent incredibility in the story told, as would reasonably tend to show that he wilfully swore falsely. We find nothing in this record which would warrant us in saying the court was guilty of an abuse of discretion in denying this instruction.

Misconduct of the jury is also alleged, and we find a showing and counter showing in the bill of exceptions. There appears to have been an acrimonious debate between two of the jurors, but after this debate had subsided the jury deliberated for several hours before they reached a verdict, and finally came into court the fol-

lowing morning, and this juror, who now seeks to impeach the verdict, together with his fellow jurors, returned the verdict into court in the usual way. There is no misconduct shown which would warrant us in disturbing the verdict.

This leads us to the consideration of the sole remaining question: Is the verdict excessive? At the time the accident occurred, plaintiff was 56 years of age, with a life expectancy of more than 16 years. He was earning $12 a week, without any prospect of promotion or increase of income. It is claimed in his behalf that the injuries received have totally incapacitated him for labor, and that he has undergone great pain. The case has twice been tried. The first jury returned a verdict for $8,100, and the second a verdict for $13,500, on which the trial court ordered a remittitur of $5,000, which was entered, although appellee now asks us to disregard the remittitur and enter a judgment for the original amount of the verdict under the provisions of chapter 247, Laws 1915. Defendant denies that plaintiff is wholly incapacitated for labor. It appears that in September, 1913, three years after the accident, he undertook to do janitor work in an apartment house. He lived with his family in this building from September until March. Plaintiff and members of his family testify that he was unable to do the work alone, but that his sons, daughter and wife assisted him and really did the greater part of the work; while defendant offers the testimony of the proprietor of the building and another witness, who visited the building from time to time, who say they saw the defendant shoveling coal and doing other work of like character. With the exception of this short period, he had done nothing during the five years intervening between the date of the injury and the date of the trial. Defendant might have availed itself of its right to have him submit to a medical examination (*State v. Troup,* 98 Neb. 333), but did not see fit to do so. Plaintiff was before the jury and the trial judge, and they were better able to

judge of his physical condition than we may do from the printed record. We may assume that he is permanently and totally disabled. He has also endured great pain and suffering. For this it is hard to fix a proper amount of recovery. In view of the two verdicts returned, and the order made by the trial judge, we are not prepared to say that the recovery is excessive. On the other hand, we must refuse to entertain appellee's request to enter a judgment for the original amount of the verdict, and the judgment will be affirmed for the amount fixed by the trial court.

AFFIRMED.

ROSE, J., not sitting.