STATE OF IOWA, appellee, v. RONALD GENE TORRENCE, appellant.

No. 51335.

(Reported in 131 N.W.2d 808)

DECEMBER 15, 1964.

Charles W. Bowers and Ray Hanrahan, both of Des Moines, for appellant.

Evan Hultman, Attorney General, John H. Allen, Assistant Attorney General, Francis E. Tierney, of Fort Dodge, County Attorney, and Mark McCormick, of Fort Dodge, Assistant County Attorney, all for appellee.

SNELL, J.—This is an appeal following a conviction and sentence of defendant for rape. That the unfortunate victim was brutally abused and repeatedly raped by two or more men during a period of about two hours appears without question and is not an issue on appeal. Defendant admits being present but denies any willing participation in the offense.

The evidence was sordid, shocking and nauseating. We will omit details.

At about 1 a.m. on May 21, 1963, the prosecuting witness and her steady boyfriend (Robert Christiansen) were parked in a narrow lane off the public highway. They were indulging in some rather heavy petting to the extent that the girl had removed her clothing. Another car pulled into the lane in front of them. Defendant and two other men, David Sexauer and George Fox, got out of the other car and approached the Christiansen car. Fox and Sexauer were armed with pistols. Under threat of being shot Christiansen finally unlocked the car door. The girl was pulled from the car. She identified defendant and Fox as the men who pulled her from the car. For about two hours and against her violent struggles she was subjected to abuse, indignities and, after several unsuccessful attempts by her assailants,

was raped repeatedly. Her escort, Christiansen, was beaten, pistol-whipped and threatened with being shot.

The girl identified defendant as one of the two who pulled her from the car, one of the first to attempt intercourse, and as holding her down "by the hair of the head" to aid Fox in his attempts. She testified that each assailant attempted intercourse at least three times and that each, including defendant, succeeded.

Her testimony as to the assault and the participants was corroborated by Christiansen.

At sometime during the two hours defendant intervened in behalf of the victim and tried to make Fox and Sexauer desist from further abuse. For his efforts he too was beaten and threatened. In fright he took off across the pasture. He later returned as the parties were leaving the scene.

When finally released Christiansen and the girl drove back to the city. The girl put on her clothes during the drive back. They went first to the radio station where Christiansen was employed and immediately called the police. The police came and took them to the police station. The girl was disheveled and hysterical. She was examined and questioned briefly and taken to the hospital. There she was examined and treated.

Intercourse was confirmed. Multiple bruises, scratch marks, lesions and recent trauma were noted by the doctor. She told the doctor what happened.

Before going from the police station to the hospital the police called Mrs. J. N. Ashford with whom the girl lived. Mrs. Ashford testified:

"I received a call from her or in her behalf on the early morning of May 21. First I received a call from the police station and said that she wanted to talk to me, then I talked to her. She told me why.

"Q. What did she say? (Mr. Crawford: Objected to as hearsay. The Court: Overruled.) A. She said that she had been raped by three men and I said, 'Oh, no.' And she said, 'Yes, but I couldn't help it. They held guns on me.' Then she broke down and sobbed and cried. I told her I would be right down. I went to the police station. When I got there they had taken her to the hospital. I went to the hospital, * * *."

Christiansen and the girl told the police and testified before the grand jury that they were parked on the highway and that the girl was clothed when they were first accosted. At the trial they said they did this to avoid embarrassment but told the truth at the time of trial.

From descriptions given the police, Fox, Sexauer and defendant were arrested at the Fox home within a few hours. Sexauer was asleep on the floor still wearing his gun. Fox was upstairs in bed. A few hours later, acting with a search warrant, the sheriff found a twenty-two pistol under the pillow where Fox had been sleeping. Defendant was found in another bedroom.

· The three men were taken to jail where each was positively identified as one of the assailants by Christiansen and the girl.

Statements were taken from defendant while in jail and later offered in evidence. Defendant does not claim that the statements were involuntary. From the witness stand he testified:

"I feel the statements are true as to what they state. I do feel that they're areas where things have been left out. * * *."

In his own behalf defendant called twelve character witnesses who testified as to his good character.

He also called a clinical psychologist who had examined defendant. This witness found defendant to have an intelligence quotient of 107 and "ended up with a diagnosis from these tests of a passive, aggressive personality, passive, dependent type. * * * He is normal in the sense he is not psychotic, he is not out of contact with reality at all. * * *."

Defendant testified in his own behalf.

I. Defendant claims error in the giving of Instruction No. 19. This instruction was as follows:

"It is the law of this state that all persons concerned or engaged in the commission of a crime, whether they directly commit the act constituting the offense or knowingly aid, assist or encourage the same, are deemed to be principals in any crime so committed and are to be convicted as such.

"In other words, in order for a person to be guilty of the commission of a crime, it is not necessary that he commit the crime alone and unassisted. ·

"In this case, if you find from the evidence beyond a reasonable doubt that the State has proven that the defendant knowingly aided, assisted or encouraged one or more other persons to commit the crime charged in the indictment, in the manner and form and at the time and place therein charged, then you should return a verdict of guilty as against the defendant.

"If, however, on a full consideration of the whole case and in the light of the law as given you in all of these instructions, when considered and construed together, you have a reasonable doubt as to the guilt of the defendant, you must acquit the defendant of the crime charged."

Defendant claims that this instruction fails to set forth his theory of the case that he desisted and withdrew before the crime was committed by anyone.

It is not now claimed that the instruction as given was an incorrect statement of the law as a general proposition. In the trial court defendant excepted to the instruction as not a correct statement of the law and not defining the crime charged or the quantity of proof necessary to convict and going beyond the requirements of the statute. (Section 688.1, Code of Iowa, abrogates the distinction between an accessory before the fact and a principal.) It is now claimed that the instruction is not complete nor correct as "applicable to the facts of this case."

The record does not disclose that in the trial court there were any exceptions to the instruction except as we have noted. There was no request for amplification nor for an additional instruction on the theory of defendant's withdrawal.

We find no error in this instruction. It is in accord with the statute.

The first case cited by defendant in his brief, State v. Baker, 246 Iowa 215, 231, 66 N.W.2d 303, says: "It is a well-settled rule of this court that where an instruction is correct as given, though not as explicit as a party may desire, error cannot be based thereon, in the absence of a request for additional instruction."

There was a good reason for defendant's failure to seek and the court's failure to instruct on withdrawal. The defense was

not based on that theory. The question of withdrawal was not in the case.

Defendant denied any voluntary participation at anytime. He denied assisting Fox and Sexauer in anyway. He denied intercourse. He denied any contact with the girl except at the point of a gun. Under defendant's own testimony there was no theory of withdrawal because he could not withdraw from an activity he was never in. Defendant denied any common enterprise with Fox and Sexauer from which he could withdraw. There was no need for an instruction on withdrawal.

The defense was based on nonparticipation and an attempt to help the victims. That is not the same as the theory of withdrawal now argued.

In Welton v. State, 171 Neb. 643, 647, 107 N.W.2d 394, 396, the Supreme Court of Nebraska said:

"The defendant's plea was not guilty. His testimony amounted to a denial that the offense occurred. He presented no evidence of an affirmative or other special defense. The assignment of error in reference to a failure of the trial court to instruct the jury as to the defendant's theory of the case is without merit."

■ II. The incident took place while the victims of the assault were parked in a private lane off the public highway. At the time the girl was disrobed. These facts were voluntarily disclosed by Christiansen and the girl in their direct examination. The accuracy of these disclosures is not challenged. Initially they told the police and testified before the grand jury that they were parked on the highway and that the girl was clothed.

In the trial court defendant asked the court to give the stock instruction on impeachment, No. 1.10, Iowa State Bar Association Uniform Instructions, and now alleges error for failure to so instruct. Defendant argues that an instruction based on the maxim "falsus in uno, falsus in omnibus" should have been given.

The variation in the testimony of the State's witnesses at the trial from the testimony before the grand jury went to the question of general credibility and not to the accuracy of the testi-

mony at the trial. Everyone agreed as to where the attack took place and that the girl was disrobed. That a rape took place in Webster County is not disputed. How or if the girl was clothed at the time in no way tended to prove or disprove defendant's participation therein.

The witnesses disclosed the discrepancy in their own statements and explained it as an initial attempt to avoid embarrassment.

Welton v. State, supra, was a prosecution for contributing to the delinquency of a minor. The prosecution brought out conflicting statements by the prosecuting witness. The court said at page 646 of 171 Neb., page 396 of 107 N.W.2d:

"It is always permissible for a party to ask his own witness whether he had made prior statements inconsistent with his testimony and such an inquiry is not objectionable, although the incidental effect of it is to impeach the witness. Such an examination is a proper one for the purpose of showing * * * an explanation of his apparent inconsistency * * *."

The discrepancies did not impeach any material testimony offered at the trial. The testimony of the State's witnesses in these particulars was in accord with defendant's testimony.

In State v. Harting, 239 Iowa 414, 425, 30 N.W.2d 491, there was a request for an instruction based on the thought "falsus in uno, falsus in omnibus." There was a discrepancy between an information and subsequent testimony. We said:

"We do not condone or excuse the conduct of these witnesses. But the subject matter of their admitted misrepresentation was entirely immaterial both here and in the charges against Robinson and Stanfel. * * * Nor do we find anything in their testimony in the instant case to warrant the giving of such an instruction.

"There was no error in refusing it."

In State v. Kobylasz, 242 Iowa 1161, 1169, 47 N.W.2d 167, there was a similar request. We said:

"The giving of such an instruction was approved in O'Hara v. Miller, 64 Iowa 462, 20 N.W. 760. Had it been given here we probably would not have held it error. But the giving of such instruction is much in the discretion of the trial court. 64 C. J.;

Trial, section 551; 53 Am. Jur., Trial, section 784; Wunrath v. Peoples Furniture & Carpet Co., 100 Neb. 539, 160 N.W. 971, 973. See also 23 C. J. S., Criminal Law, section 1259; annotation 90 A. L. R. 74 et seq.

"The testimony of the prosecuting witness here was in some respects quite incredible. But the portions which were in conflict with the other testimony, particularly that of defendant and Burns, relate to somewhat collateral matters * * *.

"We cannot hold that failure here to give the instruction constituted reversible error."

In the case at bar the impeachment or falsity in prior testimony did not go to a material matter or to any matter in controversy. The giving or refusal of the instruction was within the discretion of the trial court. There was no such abuse of discretion as to require reversal.

III. Defendant claims reversible error because of leading questions asked the prosecuting witness. In disclosing to the jury the sordid and very intimate details of the offense some leading questions were asked and answered. They related to matters that a young woman would not be anxious to discuss in public. The allowance of leading questions under the circumstances was within the discretion of the trial court. The general rule is stated in 98 C. J. S., Witnesses, section 331, as follows:

"Notwithstanding the general rule against leading questions, the control of such matters is largely within the sound discretion of the trial court. Stated otherwise, the extent to which leading questions may or may not be permitted is primarily subject to the control of the court in the exercise of its sound discretion, which may, in the exercise of such discretion, in criminal as well as in civil cases, allow such questions to be put to a witness when it deems such course necessary or advisable, * * *."

In support of this general rule C. J. S. cites Hackman v. Beckwith, 245 Iowa 791, 64 N.W.2d 275; State v. Hiatt, 231 Iowa 643, 1 N.W.2d 736; State v. Wheelock, 218 Iowa 178, 254 N.W. 313.

State v. Blackburn (Iowa), 110 N.W. 275, 276, says:

"Objections to the rulings of the court in the admission of evidence may be briefly disposed of. Leading questions on the

examination of the prosecutrix in behalf of the state are not usually a ground for reversal of this class of cases, the matter being largely within the discretion of the trial court. State v. Peterson, 110 Iowa 647, 82 N.W. 329; State v. Sheets, 127 Iowa 73, 102 N.W. 415."

There was no such abuse of discretion in the case at bar as to require reversal.

IV. Defendant claims error in overruling objections to the testimony of Mrs. Ashford, quoted supra. Defendant's attack is aimed at the admission into evidence of the statement, "Yes, but I couldn't help it. They held guns on me."

Defendant admits in argument that evidence of complaint is admissible but says the particulars are not unless they are part of the res gestae.

State v. Strable, 228 Iowa 886, 293 N.W. 441, cited by defendant, supports this rule but does not support reversible error here.

In the case before us there is no claim of consent or denial of the use of guns. The words attacked as not part of the res gestae related to matters admitted by defendant in his own testimony. The words did not have any bearing on anything in dispute. There could be no error in the admission of this evidence.

The telephone conversation was within a few minutes after the girl's arrival at the police station. According to the several State's witnesses who saw her she was hysterical, upset and in pain. We think the declarations were admissible as part of the res gestae. In any event the trial court has considerable discretion in this matter. State v. McClain, 256 Iowa 175, 125 N.W.2d 764; State v. Tornquist, 254 Iowa 1135, 1157, 120 N.W.2d 483; State v. Drosos, 253 Iowa 1152, 1162, 114 N.W.2d 526.

There was no error.

V. Exhibit 9 was a written statement signed by defendant on May 22, 1963. It related defendant's activities beginning with May 19. It traced the activities of Fox, Sexauer and defendant through the evening of May 20 just prior to the

assault: and mentioned larcenies by Fox and Sexauer... Defendant drove the car but denied participation otherwise..

The admission into evidence of this exhibit was without prejudice. In his direct testimony defendant related the same facts and elaborated thereon. See State v. Woodmansee, 212 Iowa 596, 609, 233 N.W. 725. He also said that the statements were true. The statement added little, if anything, to what appears from defendant's own testimony and "was therefore not sufficiently prejudicial to warrant reversal." State v. Mabrey, 245 Iowa 428, 432, 60 N.W.2d 889; State v. Long, 256 Iowa 1304, 1309, 130 N.W.2d 663, 666.

VI. It appears without dispute that during the assault Fox and Sexauer were armed with pistols. Exhibit 1 was a pistol found under a pillow in Fox's bedroom. It was identified by Christiansen as one of the guns used in the assault. The sheriff testified that during a search of the Fox house under a search warrant they found "three or four twenty-two rifles, twenty-two barrel shotguns, two double-barreled shotguns, knives, ammunition, ammunition belts."

The offer of Exhibit 1 was objected to as irrelevant and immaterial and having "no causal connection whatsoever with the crime charged." The objection was properly overruled. The gun was identified. Defendant by his own testimony was in the company of armed assailants. The gun used during the assault clearly had causal connection with the crime charged.

The other guns and ammunition found in the Fox home were not offered in evidence. The only reference thereto was by the sheriff in stating what he found with a search warrant. Defendant objected and moved to strike on the ground that the evidence was obtained by illegal search. No other objection was urged. There was nothing in the record to support the objection made and it was properly overruled. The only error now urged is lack of connection with the crime charged. No such objection was made in the trial court and there is nothing for us to review. State v. Mauch, 236 Iowa 217, 225, 17 N.W.2d 536.

Our statutory duty to review the record without regard to technical errors or defects does not apply where proper

objections are not made. State v. Ostby, 203 Iowa 333, 342, 210 N.W. 934; 212 N.W. 550, and cases cited therein:

VII. We have considered the entire record but have set forth herein only so much of the evidence as is necessary for appellate review. We find no such prejudicial error as to require reversal. The jury found defendant guilty as charged. The verdict had ample support in the evidence.

The record gives a word picture of a young man with no previous criminal record falling into bad company and in a short time ending in very serious trouble. Bad company may have been the initial cause of defendant's trouble but it is neither a legal defense nor excuse for major crime.

The case is—Affirmed.

All JUSTICES concur.