**STATE of Iowa, Plaintiff-Appellee,**

v.

**Marlin K. MUELLER,
Defendant-Appellant.**

**68536.**

Court of Appeals of Iowa.

Nov. 30, 1983.

Thomas J. Miller, Atty. Gen., and Teresa M. Baustian, Asst. Atty. Gen., for plaintiff-appellee.

Patrick R. Grady, Asst. Appellate Defender, for defendant-appellant.

Heard by DONIELSON, P.J., SCHLEGEL and SACKETT, JJ.

SACKETT, Judge.

Defendant-appellant, Marlin Mueller, appeals his conviction and sentence on two

counts of sexual abuse in the second degree.

Mueller was charged by grand jury indictment with sexually abusing his eleven-year-old daughter, Amy, on December 25, 1979 and January 17, 1980. He was also charged with sexually abusing his three-year-old son, Phillip, on January 14 and 17, 1980. The case was tried to a jury, which returned with verdicts of acquittal on the charges involving Amy. Mueller was convicted on both counts of sexually abusing Phillip. Mueller argues on appeal: (1) that the trial court erred in failing to exclude prejudicial hearsay evidence; (2) that the trial court abused its discretion in allowing the prosecutor to lead Phillip in his testimony; (3) that his conviction under Count II of the indictment must be vacated due to the failure of the evidence to show a sex act occurred under Iowa Code section 702.-17; and (4) that he was denied a fair trial as a result of the trial court's communication with the jury outside of his presence. We reverse and remand for a new trial.

## I.

At trial there was testimony from Ann Ernst, a child psychologist, concerning her interviews with Phillip Mueller. Phillip was referred to Ernst by his family physician, Dr. Arnold. Dr. Arnold made the referral for purposes of diagnosing whether Phillip was a victim of sexual abuse. Phillip's condition was such that, without corroborating evidence, Dr. Arnold could not say, with any degree of medical certainty, whether Phillip had been sexually abused. Ernst testified that, based on her sessions with Phillip, she had an opinion as to whether Phillip had been sexually abused. This opinion was based in large part on responses the child made, both verbal and nonverbal, to questions asked by her. Specifically, Ernst testified that, when asked how his "deedlebomb [penis] got red," he replied "Daddy." Furthermore, after being told he could play with a toy if he would tell how his penis got red, he selected a male doll and a male puppet and touched the mouth of the puppet to the

genitals of the doll and said, "ow,ow,ow." Ernst testified that, based upon her background and experience and her sessions with Phillip, she was of the opinion that he had been sexually abused.

Hearsay objections to this testimony were made outside of the presence of the jury. The objections were overruled. Mueller claims that the admission of this testimony was prejudicial error. The state claims that the testimony comes with the hearsay exception for statements made for purposes of medical diagnosis. We must first determine whether the testimony in question constitutes hearsay.

■ Hearsay is a statement, other than one made by a declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. *State v. Galvan*, 297 N.W.2d 344, 346 (Iowa 1980). "A 'statement' is (1) an oral or written assertion *or* (2) *nonverbal conduct of a person, if it is intended by him as an assertion.*" *Id.* (quoting *State v. Miller*, 204 N.W.2d 834, 840 (Iowa 1973)) (emphasis added).

■ The evidence of the sessions with the child psychologist here was offered in the belief that Phillip intended to assert what had happened to him, so his conduct amounted to a "statement" for purposes of the hearsay rule. If the "statement" was offered by the state to prove the truth of the matter asserted, it is hearsay evidence. We look to a statement's purpose in deciding whether it is hearsay. *State v. Horn*, 282 N.W.2d 717, 724 (Iowa 1979). We believe, after our review of the relevant testimony, that Phillip's nonverbal conduct and oral assertions were, in fact, being offered to prove the truth of the matter asserted, that is, that he was sexually abused by his father. Ernst could not testify over a hearsay objection that Phillip had *told* her that his father had sexually abused him, and the fact that Phillip *acted out* what Ernst interpreted as a sex act with dolls does not change the hearsay characteristic of such testimony. We therefore conclude that the testimony of Ann Ernst regarding Phillip's oral assertions and nonverbal conduct was

hearsay. We must next determine whether they were admissible under an exception to the hearsay rule.

The state, in its brief, argues that Phillip's statements to Ann Ernst were admissible as an exception to the hearsay rule for statements made for the purpose of medical diagnosis. We disagree. While the state correctly states the exception to the hearsay rule, we hold that the exception is not applicable to the facts presented in this case. The exception relied upon is discussed in McCormick, *Law of Evidence* § 292 (2d Ed.1972). That authority describes the exception and the basis for that exception as follows:

292. Declarations of Bodily Feelings, Symptoms, and condition: (b) Declarations to Physicians Consulted for Treatment.

Statements of a presently existing bodily condition made by a patient to a doctor consulted for treatment are almost universally admitted as evidence of the facts stated, and even courts greatly limiting the admissibility of declarations of bodily condition generally will admit statements made under these circumstances. Although statements to physicians are not likely to be spontaneous, since they are usually made in response to questions, *their reliability is assured by the likelihood that the patient believes the effectiveness of the treatment he receives may depend largely upon the accuracy of the information he provides the physician.* This strong assurance of reliability has caused some courts to expand the exception to include statements made by a patient to a physician concerning *past* symptoms. This seems appropriate, as patients are likely to recognize the importance to their treatment of accurate statements as to past as well as present symptoms.

\* \* \* \* \* \*

*The exception might be taken one step further to encompass statements made to a physician concerning the cause or the external source of the condition to be treated. In some cases the* *special assurance of reliability—the patient's belief that accuracy is essential to effective treatment—also applies to statements concerning the cause,* and a physician who views this as related to diagnosis and treatment might reasonably be expected to communicate this to the patient and perhaps take other steps to assure a reliable response. [emphasis added]

The hearsay exception regarding statements made to a physician for diagnosis and treatment was applied in *In re Estate of Poulos,* 229 N.W.2d 721, 727 (Iowa 1975). In that case, however, the court did not have occasion to discuss whether it would admit statements made to a physician relating to the *cause* of an injury or ailment. The court merely looked at each statement made and determined whether the statements were made to the physician in relation to the patient's care and treatment. *Id.* We assume, for purposes of this case, that Phillip's statements regarding the *cause* of his injury, *if related to his care and treatment,* fall within the hearsay exception regarding statements made to a physician. We will also assume, for purposes of this argument only, that Ms. Ernst, while merely a child psychologist rather than a physician, is the type of professional toward whom this exception is directed. Even making these assumptions, it is our belief that the testimony of Ms. Ernst does not fall within the exception relied upon by the state. The supreme court in *Devore v. Schaffer,* 245 Iowa 1017, 65 N.W.2d 553, 555 (1954) discussed the rationale behind the exception as follows:

[I]t is clearly explained that the rule permitting a doctor to testify as to the history of the case is an exception to the hearsay rule based on "a probability that the patient will not falsify in statements made to his physician at a time when he is expecting and hoping to receive from him medical aid and benefit." [quoting *Mitchell v. Montgomery Ward & Co.,* 226 Iowa 956, 285 N.W. 187, 188 (1939)]

It is clear that, in this instance, the degree of reliability envisioned by the su-

preme court in order to justify the admission of hearsay evidence is not present. Phillip, then three years of age, did not consult Ann Ernst for "medical aid and benefit." Rather, Phillip's mother took him to the psychologist at the suggestion of the family physician for the purpose of making a child abuse diagnosis and referral. There is no evidence in this case, as is suggested in the state's brief, that Ms. Ernst took any steps to assure a reliable response. To the contrary, she testified that Phillip was reluctant to speak with her and that she "bribed" him in order to obtain any response at all. Because the testimony of Ann Ernst regarding Phillip's nonverbal and oral assertions amounted to hearsay, and because the exception to the hearsay rule relied upon by the state is inapplicable, the trial court erred in admitting such testimony over defense objections.

Although the trial court erred in admitting this testimony, such error does not amount to reversible error unless it was prejudicial. We find that it was prejudicial.

The admission of hearsay evidence is presumed to be prejudicial error unless the contrary is firmly established. *State v. Horn*, 282 N.W.2d 717, 724 (Iowa 1979). The hearsay testimony in the instant case was clearly prejudicial. Neither physician testifying in this case could state with any degree of medical certainty whether, in fact, Phillip had been sexually abused. Defense counsel successfully impeached Amy's testimony regarding several alleged sexual encounters. The only other testimony that a sex act had occurred was Phillip's testimony on rebuttal in response to leading questions propounded by the state. It is clear, from a reading of the trial transcript, that the testimony of Ms. Ernst may well have been the deciding testimony in this case. Because of the prejudicial nature of the testimony, Mueller is entitled to a new trial.

## II.

Phillip Mueller, the alleged victim, testified as a rebuttal witness for the state. He was five years old at the time of trial, and only three years old at the time of the alleged incidents of sexual abuse. Prior to taking Phillip's testimony, the state requested permission to lead Phillip in his testimony. The trial court permitted the use of such leading questions over a defense objection. Mueller now contends that this amounted to a prejudicial abuse of discretion. The relevant testimony is as follows:

Q. Do you remember a couple of days after your sister Amy's birthday, the last time you had visitation with your dad? A. Yeah.

Q. Was that at the trailer in Table Mound—at your dad's trailer? A. Yeah.

Q. Do you remember on that day, Phillip, that your dad put a rubber band on your deedlebomb? A. Yeah.

Q. Do you remember a balloon that day, Phillip? A. Yeah.

Q. Did your dad put a balloon on your deedlebomb? A. Yeah.

Q. Do you remember what was in that balloon? A. Water.

Q. What kind of water? A. Hot water.

Q. Did it hurt you? A. Yeah.

Q. Do you remember, did your dad put his mouth on your deedlebomb that day? A. Yeah.

Q. Did it hurt? A. Yeah.

The state contends that both the age of the witness and the nature of the testimony support the trial court's decision to permit leading questions. The supreme court has often said that the trial court has considerable discretion in admitting or excluding answers to leading questions, and that there must be a clear abuse of discretion to justify a reversal. *Giltner v. Stark*, 219 N.W.2d 700, 706 (Iowa 1974). We note that the trial court is in a better position than we to observe the circumstances that may justify the asking of leading questions. *State v. Bradford*, 175 N.W.2d 381, 383 (Iowa 1970). The supreme court has recognized that leading questions

may be proper and necessary where the witness is of tender age, *State v. Jones*, 271 N.W.2d 761, 767 (Iowa 1978); *State v. Shultz*, 177 Iowa 321, 328, 158 N.W. 539 (1916), as well as where the witness is testifying as to some form of sexual abuse. *State v. Torrence*, 257 Iowa 182, 131 N.W.2d 808, 812–13 (1964). Because the witness here was only five years of age at the time of trial, and because he was testifying as to acts of sexual abuse allegedly committed on him by his father, we cannot say the trial court abused its discretion in permitting such leading questions. We do, however, recognize the potential for influencing the testimony of a person of Phillip's age and suggest that, on retrial of this case, the prosecutor first attempt to elicit Phillip's testimony through the use of non-leading questions. Only if that method fails should the type of leading questions complained of here be used.

### III.

Mueller alleges that his conviction on count II should be reversed because the state failed to prove that a "sex act" was committed on Phillip on January 14, 1980, within the meaning of Iowa code section 702.17 (1979). That section provides:

> **702.17 Sex act.** The term *"sex act"* or *"sexual activity"* means any sexual contact between two or more persons, by penetration of the penis into the vagina or anus, by contact between the mouth and genitalia or by contact between the genitalia of one person and the genitalia or anus of another person or by use of artificial sexual organs or substitutes therefor in contact with the genitalia or anus.

The crux of Mueller's argument is that count II was supported only by the testimony of Amy that the defendant rubbed and yanked on Phillip's testicles, and that even if true, such manual manipulation is not a "sex act" as defined by section 702.17. The state contends that Amy's testimony created a fact issue whereby the jury could find that Mueller had used his hand as a substitute for a vagina. The issue which we must resolve is whether the facts in the instant case indicate that the defendant's hand may have been used as a substitute for a vagina. The supreme court had occasion to interpret section 702.17 in *State v. Whetstine*, 315 N.W.2d 758 (Iowa 1982). That court construed "sex act" to include the use of a finger as a substitute for a penis. The court concluded that the defendant's finger was a substitute for a sexual organ in that case and further, that it may also be considered a substitute for an artificial sex organ. *Id.* at 761. The supreme court noted that the emphasis is on the forcible nature of the assault rather than on whether the defendant used his penis or his finger to carry out the sexual abuse. *Id.*

■ The same logic controls here. Amy testified that her father "started to rub and yank at Phillip's testicles;" that he did so over a period of twenty to thirty minutes; and that Phillip was screaming and crying while the incident took place. We hold that there was sufficient evidence from which the jury could have found that Mueller used his hand as a substitute for a vagina. The trial court properly overruled defendant's motion to dismiss count II on the grounds that the evidence did not establish a "sex act."

### IV.

Mueller's final argument is that he was denied a fair trial because the trial court communicated with the jury outside of his presence. After the jury retired for deliberation the trial judge, in response to a juror's inquiry about whether questions from jurors were a part of the record, replied that a record of the jury's questions was necessary to protect the defendant's appellate rights. The state argues that the discussion at issue was not one which raised a "point of law arising in the cause" and thus did not fall within the scope of Iowa Rule of Criminal Procedure 18(5)(g). That rule provides:

> g. **Report for information.** After the jury has retired for deliberation, if there be any disagreement as to any part

of the testimony, or if it desires to be informed on any point of law, arising in the cause, it must require the officer to conduct it into court, and, upon its being brought in, the information required may be given, in the discretion of the trial court. Where further information as to the testimony which was given at trial is taken by the jury, this shall be accomplished by the court reporter or other appropriate official reading from the reporter's notes. Where the court gives the jury additional instructions, this shall appear of record. *Provided, that the procedures described in this section shall take place in the presence of defendant* and counsel for the defense and prosecution, unless such presence is waived. [emphasis added]

We must decide initially if the juror's inquiry (regarding whether the questions from jurors and the court's answers thereto were a part of the record) was an inquiry concerning a "point of law arising in the cause" so as to render rule 18(5)(g) applicable. *See State v. Griffin,* 323 N.W.2d 198, 200 (Iowa 1982). In *Griffin* the jury requested the trial court's help concerning the definition of "physical injury" and "assault" as used in the court's instructions. *Id.* The supreme court held that in those circumstances it was clear the jury was asking for information on a point of law and that rule 18(5)(g) was therefore applicable. *Id.* This case may easily be distinguished. The question propounded by the juror did not relate to a point of law in the case. The juror merely asked the judge if questions from the jury and the court's answers were made a part of the record. The court responded that they were made a part of the record to protect the court and appellate rights. This communication was not of the nature for which rule 18(5)(g) requires the presence of the defendant.

 Even if, however, the communication complained of did fall within the scope of rule 18, Mueller must show that such error prejudiced his right to a fair trial and resulted in a verdict which might

have been based on impermissible grounds. *See State v. Griffin,* 323 N.W.2d at 201. A violation of the rule governing jury-court communications raises a presumption of prejudice unless the record shows the contrary. *Id.* The absence of prejudice may appear from the whole record and need not be established by evidence directed toward this specific point. *Id.* A court's communication with a jury in the absence of counsel and the defendant can, in fact, amount to harmless error. *State v. Dreessen,* 305 N.W.2d 438, 440–41 (Iowa 1981). We find that to be the case here. Mueller's argument that the allegedly improper communication may have encouraged the jury to shirk its responsibility in reliance upon the appellate court lacks merit. The trial court properly overruled the defendant's motions for dismissal and mistrial.

Because we find that introduction of the testimony of Ann Ernst was reversible error, we reverse and remand the cause for a new trial consistent with this opinion.

REVERSED AND REMANDED.